HENRY P. WAGER AND AGNES M. WAGER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6541–66.    Filed June 12, 1969.

*Daniel J. Moore*, for the petitioners.
*Leo A. Burgoyne* and *Barry M. Mosebach*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1962 in the amount of $3,810.97. The sole question is whether certain sums, characterized in the pertinent agreements as payments for a covenant not to compete and an undertaking to be available for consultation, should be classified as ordinary income or whether said sums were in reality part of the consideration for the sale of the patent and/or stock and therefore should be classified as capital gain.

All of the facts are stipulated and are found accordingly.

Petitioners are husband and wife who had their legal residence in Newton, N.J., at the time of filing the petition herein. The petitioners filed a joint Federal income tax return for the year 1962 with the district director of internal revenue, Newark, N.J. Agnes M. Wager is a party hereto only because she filed a joint Federal income tax return with her husband for the year 1962. Reference to petitioner shall be deemed to refer only to petitioner Henry P. Wager.

Petitioner is a practicing obstetrician and gynecologist. In 1960, he was the owner of a patent covering a special process (known as the Wagerized process) for the freeze-drying of food and food products for the purpose of dehydration and preservation and a trademark for this process. Petitioner also owned 260 of the 400 outstanding shares of capital stock of Liana, Inc., a corporation engaged in the business of processing food and food products by means of this process.

On August 15, 1960, petitioner, acting on behalf of himself and the holder of the other 140 shares of Liana stock, agreed to sell the entire capital stock of Liana, Inc., to United Fruit Co. (hereinafter United) for $300,000. The closing of this agreement was conditioned upon the execution of an agreement covering the sale of the patent and certain employment agreements, of which one was an employment agreement between petitioner and United. Petitioner claimed a long-term capital loss on his 1960 return as a result of the sale of his stock.

Also on August 15, 1960, petitioner entered into an agreement with United entitled "Patent Agreement," whereby petitioner agreed to sell all right, title, and interest in the aforementioned patent for $200,000, plus an amount not to exceed $1,700,000 in the aggregate, based upon a percentage of United's net sales of Wagerized products during the life of the patent. Petitioner reported all gains with respect to payments received under this agreement during 1960, 1961, and 1962 as long-term capital gains.

On August 24, 1960, petitioner entered into an "employment agreement" with United which provided that petitioner would render "advisory and consultative" services to United for not less than 5 years but for not more than 60 days in any calendar year. Petitioner further agreed that all pertinent inventions during his employment and for 1 year thereafter which he conceived or made would be kept secret and disclosed only to United or pursuant to its direction and would be the property of United; that he would assign any and all patents to United; that he would prepare written memoranda embodying his past knowledge and experience; and that for a period of 1 year following the termination of his employment he would not directly or indirectly engage in any activity competitive with the

business of United. Under the terms of this agreement, petitioner was to receive a "retainer" of $15,000 per year and consulting fees of $200 per day. In the event of petitioner's death or incapacity, United agreed to pay $7,500 to petitioner or his estate for the remaining term of the agreement. United requested petitioner to act as a consultant for 4 days during the period 1960 through 1965, which service consisted of 1 day in 1961 and 3 days in 1963.

Petitioner reported amounts received pursuant to this agreement as ordinary income in 1960 and 1961 and as long-term capital gain in 1962.[1] United treated all payments made to petitioner pursuant to the employment agreement as salary expense.

Petitioner was represented by counsel during the negotiation of the three agreements with United.

Other than the stipulation of facts, no evidence was presented on behalf of petitioner and no brief has been filed on his behalf. Respondent contends that the $15,000 in question represented compensation for petitioner's covenant not to compete and his availability for consulting services as provided in the agreement between petitioner and United. He relies on the application of the "mistake, undue influence, fraud, duress, etc." rule of *Commissioner* v. *Danielson*, 378 F. 2d 771 (C.A. 3, 1967), reversing 44 T.C. 549 (1965), or the so-called strong-proof rule of *Ullman* v. *Commissioner*, 264 F. 2d 305 (C.A. 2, 1959), affirming 29 T.C. 129 (1957).

We need not determine under which of the aforementioned rules this case should be decided.[2] Even if we apply the less stringent rule of *Ullman* v. *Commissioner*, *supra*, petitioner must fail. Cf. *Casco Products Corp.*, 49 T.C. 32, 37 (1967). He has not supplied the requisite "strong proof" and has therefore failed to sustain his burden of proof as provided in Tax Court Rule 32. See *Ullman* v. *Commissioner*, 264 F. 2d at 308; *Hoffman* v. *Commissioner*, 298 F. 2d 784, 788 (C.A. 3, 1962), affirming a Memorandum Opinion of this Court with respect to this issue. *A fortiori*, he has not met the standard established by the Third Circuit Court of Appeals in *Commissioner* v. *Danielson*, *supra*.[3]

---

[1] Petitioners brought a refund suit with respect to 1960 and 1961 in the U.S. District Court for the District of New Jersey. We have not been apprised of the outcome of this suit.

[2] Petitioner has failed to present a scintilla of evidence that would satisfy the requisites of proving mistake, undue influence, fraud, or duress as required under the rule of *Danielson*. Petitioner was represented by counsel during the negotiation of the agreements with United, and we have no evidence of concealment or overreaching that would provide a basis for ignoring the agreement for tax purposes.

[3] We note that any appeal from our decision herein will be to this Circuit Court of Appeals. Cf. *J. Leonard Schmitz*, 51 T.C. 306 (1968), on appeal (C.A. 9, 1969), and particularly the dissenting opinion of Drennen, *J.*, at 323–324; see concurring opinion of Simpson, *J.*, in *Norvel Jeff McLellan*, 51 T.C. 462, 466–467 (1968); Hearings before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary on S. 2041, Part 2, 90th Cong., 2d Sess., p. 137 (July 9 and 10, 1968).

Initially, we note that the agreement in question included a covenant not to compete and a provision requiring petitioner to be available for consultative services. It is well established that payments received on account of a covenant not to compete are taxable as ordinary income. See *Ullman* v. *Commissioner*, 264 F. 2d at 308, fn. 3, and cases cited therein. Likewise, the proceeds of an agreement to provide consultative services are taxable as ordinary income. *Arthur C. Ruge*, 26 T.C. 138 (1956).

The standard for determining whether an agreement will be accorded the tax consequences apparent on its face under the strong-proof rule is whether the agreement has "some independent basis in fact or some arguable relationship with business reality." See *Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9, 1961), affirming 34 T.C. 235 (1960); *Balthrope* v. *Commissioner*, 356 F. 2d 28 (C.A. 5, 1966), affirming a Memorandum Opinion of this Court; *Hamlin's Trust* v. *Commissioner*, 209 F. 2d 761 (C.A. 10, 1954), affirming 19 T.C. 718 (1953); *Benjamin Levinson*, 45 T.C. 380 (1966). There is no suggestion in the record that the compensation allocated to the patent, namely, $200,000 plus a percentage of sales not to exceed $1,700,000, or the $195,000 received by petitioner for the sale of his stock was inadequate. While petitioner's primary occupation was as a physician, we have no indication of the time petitioner devoted to, or his expertise with respect to, food processing. Consequently, we have no basis for finding that the covenant not to compete with United was illusory or meaningless. Furthermore, the consideration allocated to this phase of the agreement reflected not only the covenant not to compete but also the agreement to be available for consultation. The fact that petitioner was not called upon to provide any services in the year in question and that he served only a few days in other years does not undercut a finding of economic reality in this phase of the agreement. United bargained for and received petitioner's agreement to be available for services, rather than his services for which a separate consideration of $200 per day was provided. There is no indication on this record that United did not intend to utilize petitioner's services or that petitioner believed he would not be called upon to render services.

Finally, we note that the fact that the agreement called for a continued reduced level of payment in the event of petitioner's death, illness, or incapacity is immaterial in the context of the apparent arm's-length bargaining and attendant economic reality involved herein. *Benjamin Levinson*, 45 T.C. at 391; *Eitingon-Schild Co. and Subsidiaries*, 21 B.T.A. 1163, 1182 (1931).

*Decision will be entered for the respondent.*