GLENN W. LUCAS, JR., AND CARLENE LUCAS, PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6691–70. Filed September 26, 1972.

---

*James G. Leathers, Jr.*, for the petitioners.
*Harry M. Asch* and *William E. Saul*, for the respondent.

1028

**OPINION**

RAUM, *Judge:* The contract of sale, pursuant to which petitioner purchased Bell's accounting practice in 1964, contained no provision for a covenant not to compete on Bell's part in accordance with the specific agreement reached by the parties to the agreement that such a covenant would not be part of the contract. The petitioners, however, argue that such a covenant in reality existed by virtue of the interrelation of Bell's employment contract and the contract of sale, and that $20,000 of the purchase price of the accounting practice was allocable thereto. The petitioners therefore contend that they are entitled under section 167, I.R.C. 1954, to the depreciation deductions claimed on the 1965, 1966, and 1967 tax returns in respect of the purported covenant not to compete. The Commissioner, on the other hand, maintains that petitioners have not adduced sufficient proof to thus contradict the terms of the contract of sale by installing therein a covenant not to compete where no such covenant existed in the agreement itself, and that in any case the amount paid under the

contract of sale for the intangible assets of the accounting practice was attributable to nondepreciable goodwill.

Where a taxpayer has entered into a written agreement, such as the contract of sale here, that provides for the specific terms of a transaction the tax consequences of which are in issue, we have applied the rule that "strong proof" must be adduced by the taxpayer if he seeks to establish a position at variance with the language of the agreement to which he was a party. *J. Leonard Schmitz*, 51 T.C. 306, 315–318, affirmed sub nomine *Throndson* v. *Commissioner*, 457 F. 2d 1022 (C.A. 9). See *Balthrope* v. *Commissioner*, 356 F. 2d 28, 31–33 (C.A. 5), affirming a Memorandum Opinion of this Court; *Montesi* v. *Commissioner*, 340 F. 2d 97, 100 (C.A. 6), affirming 40 T.C. 511, 518; *Barran* v. *Commissioner*, 334 F. 2d 58, 63–64 (C.A. 5), affirming on this issue 39 T.C. 515; *Ullman* v. *Commissioner*, 264 F. 2d 305, 308 (C.A. 2), affirming 29 T.C. 129; *Edmond E. Maseeh*, 52 T.C. 18, 22. Cf. *Meyer Mittleman*, 56 T.C. 171, 175. The present case arises in the Ninth Circuit which previously has also explicitly approved this so-called "strong proof" rule. *Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9), affirming 34 T.C. 235. Cf. *J. Leonard Schmitz*, 51 T.C. 306, 316–318, affirmed sub nomine *Throndson* v. *Commissioner*, 457 F. 2d 1022 (C.A.9).[1]

In a situation where the pertinent contract specifically provides for a covenant not to compete and a taxpayer seeks to deny the bona fide existence of the covenant as a part of his agreement, the "strong proof" doctrine requires a determination of whether the covenant in issue was in fact intended as a part of the contract, and also whether it had an independent economic significance in the agreement such that

[1] The Commissioner urges us in deciding the issue in controversy to apply instead the even more severe standard of proof recognized by the Third Circuit in *Commissioner* v. *Danielson*, 378 F. 2d 771, 775 (C.A. 3), vacating and remanding 44 T.C. 549, certiorari denied 389 U.S. 858. We have previously indicated in *Meyer Mittleman*, 56 T.C. 171, 175, that the *Danielson* rule will be observed by us in cases arising in the Third Circuit because of the compulsion of *Jack E. Golsen*, 54 T.C. 742, 756–758, affirmed 445 F. 2d 985 (C.A. 10), certiorari denied 404 U.S. 940, but that we are otherwise disposed to the "strong proof" rule, which we are free to apply in cases arising in other circuits.

This Court rejected application of the *Danielson* rule in *J. Leonard Schmitz*, 51 T.C. 306, 315–318, and on the recent appeal of that case in the Ninth Circuit, in which the present case arises, the Commissioner took up the argument in favor of the adoption of the standard of proof required in *Danielson*. The Ninth Circuit, however, on its interpretation of the case found it unnecessary to "reach the merits of the Danielson rule," inasmuch as it considered that there was no binding contract which required application of a rule of proof as to the taxpayer's ability to take a contrary position thereto. *Throndson* v. *Commissioner*, 457 F. 2d 1022, 1025–1026 (C.A. 9), affirming sub nomine *J. Leonard Schmitz*, 51 T.C. 306. It is to be noted that where it has addressed itself to the question of the burden of proof required of a taxpayer seeking to vary the terms of a viable contract to which he was a party, the Ninth Circuit has applied the "strong proof" rule. *Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9), affirming 34 T.C. 235. However, if the situation were otherwise and the Ninth Circuit had not adopted this rule, and the *Throndson* case were to be read as leaving the matter open, we would still apply the "strong proof" standard as we have previously indicated in *Meyer Mittleman*, 56 T.C. at 175.

we might conclude it was a separately bargained-for element thereof. See *Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9), affirming 34 T.C. 235; *Henry P. Wager*, 52 T.C. 416, 419; *Edmond E. Maseeh*, 52 T.C. at 22. See *General Insurance Agency, Inc.* v. *Commissioner*, 401 F. 2d 324, 329–330 (C.A. 4), affirming a Memorandum Opinion of this Court; *Fulton Container Co.* v. *United States*, 355 F. 2d 319, 325 (C.A. 9). Cf. *Balthrope* v. *Commissioner*, 356 F. 2d 28, 32–34 (C.A. 5), affirming a Memorandum Opinion of this Court; *John T. Dodson*, 52 T.C. 544, 555–556; *Benjamin Levinson*, 45 T.C. 380, 389–390. In the present case, petitioners seek rather to import such a covenant into the contract of sale when no specific provision was made in this respect. It is similarly necessary to determine here whether the parties to the agreement, in fact, intended such a covenant to be an element of their contract and also meant to allocate part of the purchase price thereto, and further whether such covenant, if so intended, had an identifiable economic existence in the contract of sale. See *Wilson Athletic G. Mfg. Co.* v. *Commissioner*, 222 F. 2d 355, 357 (C.A. 7), reversing and remanding a Memorandum Opinion of this Court; *General Insurance Agency, Inc.* v. *Commissioner*, 401 F. 2d 324, 329–330 (C.A. 4); *Delsea Drive-In Theatres, Inc.* v. *Commissioner*, 379 F. 2d 316, 317 (C.A. 3), affirming per curiam a Memorandum Opinion of this Court; *Fulton Container Co.* v. *United States*, 355 F. 2d 319, 325–326 (C. A. 9). We think that petitioners have failed to establish by either "strong proof" or otherwise that a covenant not to compete was intended as a bargained-for element of the contract of sale, or that any amount of the purchase price was meant to relate thereto. Indeed, the record makes plain that the parties to the contract of sale in fact intended that such a covenant not be incorporated in the agreement.

At the time the contract of sale was negotiated, petitioner, admittedly on advice from Bell's attorney that a covenant prohibiting competition by Bell would not be an appropriate provision of the contract of sale, specifically agreed such contract should not itself include the covenant argued for here. Bell, for his part, never considered a covenant not to compete to be any part of the *sale* of the accounting practice. It is noted in this respect that Bell had no intention of competing with petitioner, and that petitioner knew Bell was selling his practice in order to withdraw from the rigors of the competitive world and not embrace them. Petitioner, moreover, anticipated that Bell would assist with the transfer of his former clients' allegiance to petitioner after the sale, and otherwise aid in preserving the continuity of the accounting practice. To be sure, Bell's personal acquaintance with his clients may have made him in other circumstances a

competitive force in Woodland with which to be reckoned. But the circumstances here surrounding the sale of the accounting practice indicate not only that Bell never contemplated such competition but also that petitioner was aware of Bell's intention to ultimately decrease his workload and to assist petitioner rather than compete with him.

As we view the record, what petitioner purchased, in addition to the tangible assests of the accounting practice, was the considerable goodwill which Bell had built up over the years. The practice consisted primarily of providing accounting services on a continuing basis for various clients who had dealt recurrently with the Bell practice for some time. See *Karan* v. *Commissioner*, 319 F. 2d 303, 305–306 (C.A. 7), affirming a Memorandum Opinion of this Court; *Masquelette's Estate* v. *Commissioner*, 239 F. 2d 322, 325–326 (C.A. 5), reversing and remanding a Memorandum Opinion of this Court; *Hoyt Butler*, 46 T.C. 280, 284–287; *Malcolm J. Watson*, 35 T.C. 203, 213–215; *Richard S. Wyler*, 14 T.C. 1251, 1259–1261. Cf. *Commissioner* v. *Seaboard Finance Co.*, 367 F. 2d 646, 649–650 (C.A. 9), affirming a Memorandum Opinion of this Court; *Edward A. Kenney*, 37 T.C. 1161, 1170–1172. Such clients had an obvious allegiance to the practice, and Bell's active assistance, his name listed as it was in the firm directory, together with Richter and Mrs. Anderson's presence, insured a transfer of such allegiance, and the goodwill associated therewith, to petitioner after the purchase of the practice. See *Charles W. Miller*, 56 T.C. 636, 649–651; *Malcolm J. Watson*, 35 T.C. at 213–214. Petitioner, in fact, purchased client books and ledgers, the sole use and value of which depended on such continuity of the goodwill relationships. And such goodwill was itself not depreciable. Sec. 1.167 (a)–3, Income Tax Regs. See *Balthrope* v. *Commissioner*, 356 F. 2d 28, 31 (C.A. 5), affirming a Memorandum Opinion of this Court; *J. Leonard Schmitz*, 51 T.C. 306, 313, affirmed sub nomine *Throndson* v. *Commissioner*, 457 F. 2d 1022 (C.A. 9).

Because he was nevertheless still interested in protecting himself against possible future competition from Bell, petitioner decided to insulate himself from such competition in another manner through the device of the employment contract. It is certainly true that the contract of sale and the employment contract, executed simultaneously, were related transactions. But while we view them as related or collateral and not as mutually distinct one from the other, it does not necessarily follow that the two agreements were inextricably integrated or bound up with each other or that the provisions of each contract were not peculiar thereto. *Edward A. Kenney*, 37 T.C. at 1169. Both the contract of sale and the employment contract provided the terms of different, albeit related transactions. Equally important,

each provided its own consideration in respect of its specific terms. And under the employment contract petitioner paid Bell compensation in the amount of $14,000 in 1965, the effective year of the restriction on competition included in such agreement, and proceeded to deduct this amount on his Federal income tax return for 1965 wholly apart from the deduction in that year here in issue. Whatever protection petitioner acquired against possible competition from Bell, therefore, was pursuant to the terms of the employment contract and not the contract of sale which related solely to the purchase of the accounting practice. *Edward A. Kenney*, 37 T.C. at 1169–1170. See also *Roy W. Johnson*, 53 T.C. 414, 426; *Winchell Co.*, 51 T.C. 657, 660–662. And such protection, as was acquired, was not attributable in any part to the $40,000 purchase price of the accounting practice, but to the compensation which petitioner paid Bell under the employment contract and the subsequent employment agreement of December 1965, and which he claimed as deductions independently of the amounts in issue, on his tax returns.

In the circumstances, it seems clear that the parties to the contract of sale never mutually intended a covenant not to compete of the type for which petitioners contend, or meant to allocate part of the purchase price thereto. While petitioner desired protection from competition for his own reasons, and may have considered that he acquired it, the source of such protection was certainly not the contract of sale or attributable in any part to the $40,000 purchase price. Petitioner merely proceeded unilaterally to allocate $20,000 of the purchase price to the purported covenant after the agreement was executed, and by his own admission "picked the figure * * * out of the air" in doing so. He never discussed with Bell either this allocation, or his opinion that the contract of sale and the employment agreement were somehow integrated parts of the same transaction, and Bell considered the two agreements to be distinct and independent of each other. Surely, this is not a situation where it can be said the parties to the contract of sale bargained over a covenant not to compete and worked out an allocation of part of the purchase price thereto. Cf. *Delsea Drive-In Theatres, Inc.* v. *Commissioner*, 379 F. 2d 316, 317 (C.A. 3), affirming a Memorandum Opinion of this Court.

It is also to be noted that petitioner accepted Bell's offer to sell the accounting practice for an overall price of $40,000 prior to any mention of a covenant not to compete. While it is true that an agreement between the parties to a contract, such as the one in issue, may not have sufficiently "crystallized" so that an allocation of part of the purchase price to a covenant not to compete can be effective even if made after the total purchase price has been agreed to (*Grant T. Rudie, Jr.*, 49

T.C. 131, 139; *Edmond E. Maseeh*, 52 T.C. at 21–24), no such allocation was ever made here mutually by petitioner and Bell as a bargained-for element of their contract. One of the reasons "strong proof" is required in cases of this nature is to foster a basis of justifiable reliance on the terms of a written agreement, worked out by the parties thereto, not only as far as the Commissioner is concerned but also in respect of the parties themselves. See *Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9), affirming 34 T.C. 235. Bell proceeded to treat the amounts received by him as capital gain, as the terms of the contract of sale would suggest. Cf. *Hamlin's Trust* v. *Commissioner*, 209 F. 2d 761, 763–765 (C.A. 10), affirming 19 T.C. 718; *Benjamin Levinson*, 45 T.C. 380, 387, 391. Petitioner was aware that Bell considered there was goodwill associated with the sale, and suggested to Bell that they each handle the transaction independently. To allow a taxpayer's uncommunicated interpretation of his contract in contradiction of its explicit terms, and his de facto allocation of a portion of the purchase price to a purported covenant that was not a part thereof, to prevail in such circumstances could have the effect of unduly embroiling the other party to the agreement as well in litigation with the Commissioner whose sole interest is in protecting the revenues.

Petitioners, nonetheless, argue that the interrelation of the contract of sale and the employment contract, by which they seek to import a covenant not to compete into the contract of sale, is manifest by virtue of the provision of the contract of sale that guaranteed an average of $75,000 in gross billings for 1965 and 1966, and allowed for a credit of one-half the deficit in such billings below $75,000 against the deferred-payment promissory note of $20,000 which was due at the earliest 5 years after the termination of Bell's employment or May 1, 1974. But it is difficult to see how the alleged connection gives rise to a covenant of the magnitude petitioners argue for here. The employment contract, which did include a restriction on competition, ran for only 1 year, until December 31, 1965, after which date there was no written commitment prohibiting Bell from competing. Moreover, the guarantee of income related to only 1965 and 1966. Petitioner nevertheless considered the purported insulation from competition, achieved by the contract of sale and employment contract, effective for at least 5 years, because if Bell had not honored the employment contract and had proceeded to compete, petitioner could have tied the matter up in the courts without having to pay interest on the $20,000 note. Be this as it may and even granting the repose which these considerations may have given petitioner, as far as Bell was concerned, he could have honored his employment commitments, entered into competition after 1966, and thereby violated neither the terms of the contract of sale nor

the employment contract, or jeopardized the $75,000 gross billing revenue guarantee. Moreover, petitioners have nowhere suggested how they determined an ascertainable useful life for the purported covenant. They did not for instance depreciate the alleged covenant in a manner which reflected even petitioner's own understanding of the agreements, based on some interrelation of the contract of sale and employment contract. Rather they claimed depreciation deductions over a 4-year and not the 5-year period which petitioner supposedly considered the scope of his protection, and merely claimed deductions in this respect for the amounts he paid to Bell in the years in issue under the contract of sale, without any apparent relation to the value of the purported covenant itself. In any case, the $20,000 deferred-payment promissory note, which petitioners insist represented consideration for the alleged covenant, could have become due any time from 5 or 6 years to 10 years after the sale of the accounting practice, and such due date, whenever it occurred, would bear no relation to petitioner's protection from competition under the employment contract.

Petitioners have also suggested that any reasonable man, concerned with his economic future, would not only expect a covenant not to compete from Bell, but also would pay $20,000 therefor. Cf. *Balthrope* v. *Commissioner*, 356 F. 2d 28, 31 (C.A. 5), affirming a Memorandum Opinion of this Court; *Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9), affirming 34 T.C. 235; *Edmond E. Maseeh*, 52 T.C. at 23. In the present circumstances and given Bell's apparent inclination to retreat from the active life, we cannot agree that such is necessarily the case here. Bell in fact remained in petitioner's employ, cutting back on his workload year by year as he intended, until 1971 at which time he again opened an accounting practice of his own only because he and petitioner could not come to terms on a new employment contract. It is perhaps a close question. But we are satisfied that the contract of sale and employment agreement reflected what were the mutual intentions of the parties thereto as they themselves then perceived the economic nature of the transactions when they entered into the contracts. In any case, this aspect of the so-called "economic reality" test, which the petitioners seize upon, is merely a means of testing the validity of a covenant once the intention of the parties to include such a covenant in their contract has been determined. See *General Insurance Agency, Inc.* v. *Commissioner*, 401 F. 2d at 329–330; *Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9), affirming 34 T.C. 235. Here, it is apparent on the face of the record that the parties in fact intended no such covenant.

It has also been suggested that petitioner was at a legal disadvantage

when he entered into the contract of sale inasmuch as he merely followed the advice given to him by Bell's attorney. Petitioner did not obtain legal counsel on his own behalf because he thought the matter simple enough not to require representation. He was a certified public accountant of some experience. His failure to inform himself adequately as, to the tax consequences relating to the purchase of the accounting practice, or to secure competent legal advice, if these matters were otherwise relevant, cannot be a source of complaint here when it is clear that he understood the terms of the contract of sale and explicitly agreed that such agreement would not include a covenant not to compete. *Balthrope* v. *Commissioner*, 356 F. 2d 28, 34 (C.A. 5), affirming a Memorandum Opinion of this Court; *Hamlin's Trust* v. *Commissioner*, 209 F. 2d 761, 765 (C.A. 10), affirming 19 T.C. 718; *Edmond E. Maseeh*, 52 T.C. at 23–24.

Because we have decided that petitioner and Bell did not intend a covenant not to compete to be part of the contract of sale or to allocate any part of the purchase price thereto, we find it unnecessary to consider the possible relation between such alleged covenant and the goodwill which was part of the sale. See *Balthrope* v. *Commissioner*, 356 F. 2d 28, 31 (C.A. 5); *Barran* v. *Commissioner*, 334 F. 2d 58, 63 (C.A. 5), affirming on this issue 39 T.C. 515; *Schulz* v. *Commissioner*, 294 F. 2d 52, 55–56 (C.A. 9), affirming 34 T.C. 235.

*Decision will be entered for the respondent.*