**HARVEY RADIO LABORATORIES, INC.**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 72–1287.

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1972.

Decided Dec. 13, 1972.

Chester M. Howe, Boston, Mass., for petitioner-appellant.

Charles R. Burnett, Atty., Tax Div., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, and Crombie J. D. Garrett, Attys., Tax Div., Dept. of Justice, were on brief, for respondent-appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

The present case, decided by the Tax Court prior to our opinion in Leslie S. Ray Ins. Agency, Inc. v. United States, 1 Cir., 1972, 463 F.2d 210, raises a question not therein resolved, but a logical

extension of the issue then before us. Taxpayer here, a Massachusetts corporation in the radio and television broadcasting business, agreed to sell its business for $1,750,000 cash. In the initial discussions nothing was said about a covenant not to compete, but the buyer subsequently requested one. The covenant's geographical scope was proposed to be fifty miles from Boston, taxpayer's place of business, but was later reduced to twenty-five at the request of one Lyman, who, with his wife, owned all of the stock of taxpayer and who was a party to the sales agreement. In the completed purchase and sale agreement $60,000 was designated as paid for the covenant not to compete, apportioned $45,000 to taxpayer, $5,000 to the Lymans and $10,000 to one other nominal vendor.

No other item transferred or agreed to by taxpayer was assigned a separate dollar figure. The present question is whether taxpayer must treat the $45,000 payment as ordinary income, or whether it may consider it as a capital gain on the sale of its assets. The Tax Court held the former, rejecting taxpayer's position, and this appeal followed. T. C. Memo. 1972–85.

 In *Leslie Ray* we held that where a taxpayer bought a going business with a covenant by the seller not to compete in the local area for a period of years and the contract provided no separate consideration for the covenant, taxpayer could not, for tax purposes, unilaterally attribute part of the purchase price to the covenant and amortize the cost over its term, without "strong proof" that the parties intended to attribute that separate value to the covenant. Citing cases, we said,

"[A] taxpayer may vary the allocation stated, or implicit, in the agreement by, but only by, establishing that the parties, who have competing tax interests in the matter, agreed on a different figure when they signed the contract." 463 F.2d at 212.

Since the present taxpayer has not sought to prove any ancillary agreement that would vary the contract terms, the rule of *Leslie Ray* would seem clearly applicable. But since both it and the Commissioner argue for the application of different rules, we will elaborate more fully our reasons for preferring the *Leslie Ray* rule before drawing conclusions in the present case.

Other courts have, in fact, poured a somewhat different substance into their "strong proof" rules. In some the taxpayer may rebut the agreement's allocation by proving either that the covenant has no independent economic reality, or that it was "non-severable" from the good will component that was transferred in the sales agreement. *See* Montesi v. Commissioner, 6 Cir., 1965, 340 F.2d 97; Ullman v. Commissioner, 2 Cir., 1959, 264 F.2d 305. Taxpayer apparently has this in mind when it contends that under Massachusetts law a seller is "legally barred from competing" and that, therefore, any consideration for the covenant stated in the agreement had no economic meaning. We note in passing that even if we were employing such "economic reality" tests, taxpayer would fail in its proof. The Massachusetts cases hold merely that, depending on the facts of a particular sales transaction, a covenant not to compete may be implied. *See, e.g.,* Old Corner Book Store v. Upham, 1907, 194 Mass. 101, 80 N.E. 228. No case is cited to the effect that there is an implied covenant not to compete in every sale, unlimited as to type of business area and time. *See* Tobin v. Cody, 1962, 343 Mass. 716, 180 N.E.2d 652. Indeed, such covenants are expressly bargained for in Massachusetts, *see* Horvitz v. Zalkind, 1954, 332 Mass. 125, 123 N.E.2d 382, apparently because the parties find it desirable to define precisely the scope of the covenant rather than to guess what a court may decide is reasonable in their case.

 More fundamentally, our belief is that the "economic reality" rule is not appropriate, and that *Leslie Ray* states

the correct test. *Leslie Ray* states a rule of intention. If the parties to a sale have affirmatively agreed to an allocation, they should not be able to state, later, to the Commissioner, that their agreement was meaningless.

Many tax consequences may flow from the allocation of the payment for a covenant not to compete. To some extent a rule of general application for the incidents of taxes, with the advantages of certainty, is more important than subjective fairness in a particular instance. This is especially so when knowledgeable parties have it in their power, a priori, to set the direction. *Cf.* Commissioner v. Lester, 1961, 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306. As we stated in *Leslie Ray*, in the case of a non-compete covenant what, taxwise, may be good for one party is often disadvantageous for the other. The Commissioner properly points out that for parties to agree on paper one way, benefiting one of them vis-a-vis himself, and then to permit the other to claim that the agreement was really something different, exposes him to a whipsaw. This danger is one of the purposes of the "strong proof" rule. Nor is that rule to be avoided in some individual case by a showing, (as we understand taxpayer to contend here) that no whipsaw is involved. If certainty is a desirable goal, we would not consider this a desirable exception. Rather, it could only lead to highly complicated debate.

While we do not agree that a taxpayer, to suit his convenience, can freely avoid the consequences of his agreement by showing that the "economic realities" were otherwise, we have no quarrel with those cases which accord such an option to the Commissioner. *See, e.g.,* Schulz v. Commissioner, 9 Cir. 1961, 294 F.2d 52, 56; Lemery v. Commissioner, 9 Cir., 1971, 451 F.2d 173. The parties are free to make their own agreement. The Commissioner, on the other hand, has to deal with the apparent agreement he is faced with. It does not seem unfair that he should be less strictly bound to its bona fides than are the parties themselves.

Although the Commissioner is content in this particular case with the *Leslie Ray* rule, he urges us to adopt, for all cases where a party seeks to contradict its written agreement, the more stringent "*Danielson* rule" of the Third Circuit. *Danielson* holds that when the agreement of the parties specifically allocates a part of the purchase price to a covenant not to compete, the parties cannot, absent fraud, mistake, or duress, adduce parol evidence to support tax treatment inconsistent with the terms of the agreement. Commissioner v. Danielson, 3 Cir., 1967, 378 F.2d 771, cert. denied 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed. 2d 123. While at its core *Danielson*, like *Leslie Ray*, is a rule of intent, we presently see no reason for pushing to the extreme of that rule, or indeed, in determining the degree of difference. Perhaps if a taxpayer can show an ancillary agreement to support his tax treatment, then the sales agreement should not be binding. At any rate, we are not faced with that situation.

Applying *Leslie Ray* to the present case it is obvious that we must affirm the Tax Court's result. We may acquiesce in taxpayer's contention that so long as it received its total figure it was a matter of indifference to it (having apparently, not thought of the tax consequences) how it was apportioned, and that the actual division was to meet some special problem of the buyer. This does not mean that the apportionment was not agreed to.

Affirmed.