## O'DELL & COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6353–72.   Filed January 16, 1974.

*William E. Viney*, for the petitioner.
*Robert E. Casey*, for the respondent.

466

**OPINION**

RAUM, *Judge:* The issue before us concerns the deductibility of payments made by petitioner pursuant to a consultation agreement and covenant not to compete executed in connection with petitioner's purchase of Butler-Hunt. It is petitioner's position that the agreed-upon purpose of such payments accurately reflected their economic substance and that petitioner is therefore entitled to deduct those amounts either as a salary expense under section 162(a)(1) [2] or as the amortized cost of the covenant not to compete under section 167(a)(1),[3] or as both. Respondent, however, argues that the Consultation Agreement is a sham, devoid of any independent economic significance and devised solely as a vehicle for petitioner's tax avoidance. Consequently, re-

---

[2] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

[3] SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, * * *

spondent contends that the agreement will not support the claimed deductions; rather, the payments to Mrs. Hunt were entirely in consideration for the goodwill of Butler-Hunt and therefore constitute capital expenditures. We hold for petitioner.

It is well settled that when knowledgeable parties execute a covenant not to compete for a limited period in connection with the sale of a business and they expressly assign payments thereto, and when that covenant has economic significance independent of the purchase of the business itself, such a covenant not to compete is a wasting intangible asset in the hands of the covenantee and is depreciable over the course of its useful life. *Balthrope* v. *Commissioner*, 356 F. 2d 28, 31 (C.A. 5), affirming a Memorandum Opinion of this Court; *Ullman* v. *Commissioner*, 264 F. 2d 305, 307–308 (C.A. 2), affirming 29 T.C. 129; *Henry P. Wager*, 52 T.C. 416, 419; *Eleanor M. Lutz*, 45 T.C. 615, 634, reversed on other grounds 396 F. 2d 412 (C.A. 9) ; *Benjamin Levinson*, 45 T.C. 380, 389; sec. 1.167(a)–3, Income Tax Regs. Petitioner here seeks to have us recognize the validity of the covenant exactly as it is written.[4] It is an elementary rule of tax law, however, that in proper cases the Commissioner may look beyond the formal dealings of the parties and assert taxability upon the substance of the transaction, *Higgins* v. *Smith*, 308 U.S. 473; *Griffiths* v. *Commissioner*, 308 U.S. 355; *Gregory* v. *Helvering*, 293 U.S. 465, and this principle is particularly applicable in cases involving covenants not to compete, *Schulz* v. *Commissioner*, 294 F. 2d 52 (C.A. 9), affirming 34 T.C. 235; *Rich Hill Insurance Agency, Inc.*, 58 T.C. 610; *J. Leonard Schmitz*, 51 T.C. 306, affirmed on other grounds sub nom. *Throndson* v. *Commissioner*, 457 F. 2d 1022 (C.A. 9).

In determining the economic significance of the covenant before us, the ultimate inquiry is whether the parties intended that petitioner's payments to Mrs. Hunt constitute consideration for her noncompetition or whether they were in fact disguised components of the purchase price of the business.[5] The Ninth Circuit has provided a useful formulation of the proper focus in such cases (*Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9), affirming 34 T.C. 235) :

[4] Although petitioner herein bears the burden of proof respecting the bona fides of the covenant in question, this is not a situation in which the taxpayer must adduce "strong proof" in order to overcome the terms of its own written agreement. *Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9), affirming 34 T.C. 235; *Glenn W. Lucas, Jr.*, 58 T.C. 1022, 1032. The Commissioner, of course, is not subject to the same evidentiary burden in challenging the tax consequences of the agreement as written. *Harvey Radio Laboratories, Inc.* v. *Commissioner*, 470 F. 2d·118, 120 (C.A. 1), affirming a Memorandum Opinion of this Court.

[5] In dealing with this question in the past, courts have resorted alternatively to the so-called "severability" and "economic reality" tests. We, however, think it is unnecessary for us to grapple with the arguments in support of each where, as here, the independent economic substance of the covenant is clearly visible. We are of the opinion that the application of either theory would produce an outcome in conformance with the result that we reach herein.

we think that the covenant must have some independent basis in fact or some arguable relationship with business reality such that reasonable men, genuinely concerned with their economic future, might bargain for such an agreement.

There is no question that the agreement before us is the product of knowledgeable negotiations on behalf of petitioner and Mrs. Hunt and as such represents a true meeting of the minds. See *Glenn W. Lucas, Jr.*, 58 T.C. 1022, and *National Service Industries, Inc.* v. *United States* (N.D. Ga., 32 A.F.T.R. 2d 73–5863, 73–2 U.S.T.C. par. 9703). Consequently, it remains only to examine those factors which tend to reveal the true economic import of the covenant before us.

Generally speaking, the countervailing tax interests of the parties to a noncompetition covenant act to deter schemes without economic substance. *Shulz* v. *Commissioner*, 294 F. 2d at 55; *Ullman* v. *Commissioner*, 264 F. 2d 305, 307 (C.A. 2); *Benjamin Levinson*, 45 T.C. 380, 389; 67 Yale L. J. 1261, 1261–1262 (1958). And although the parties' tax awareness is not a necessary condition for attributing tax validity to their agreement (*Hamlin's Trust* v. *Commissioner*, 209 F. 2d 761, 765 (C.A. 10), affirming 19 T.C. 718), where, as here, the parties did consider their respective and adverse tax positions, it is evidence that the product of their bargaining mirrors the reality of their economic interests.

With regard to the noncompetition clause of the agreement before us, the record persuades us that in entering into such an arrangement petitioner acted in the manner of a party genuinely concerned with its economic future. There was unequivocal expert testimony at trial that one in the circumstances of Mrs. Hunt could have effectively competed with respect to Butler-Hunt's prior customers, rendering a covenant not to compete crucial to the prospective purchaser of such an agency. In light of Mrs. Hunt's then recent widowhood and her social contacts among Butler-Hunt's clients, O'Dell had ample cause to fear that a competing agency might pay for her assistance in attracting petitioner's newly acquired clients. Moreover, the evidence shows that Mrs. Hunt was knowledgeable, albeit not experienced, in insurance matters; she had the prospect of assistance from her late husband's associates in establishing a business; she enjoyed the friendship of potential clients as well as of executives of two insurance companies with which she might place her business; she was healthy; and she intended to maintain her residence in the same area. In prior decisions courts have deemed the covenantor's competitive possible intent and prospects to be probative of the economic substance of a covenant not to compete, and we are not inclined to rule that petitioner acted unreasonably in providing against such a contingency under these circumstances. See *General Insurance Agency, Inc.* v. *Commissioner*, 401 F. 2d 324, 329 (C.A. 4), affirming a Memorandum Opinion of this

Court (inability to compete) ; *Schulz* v. *Commissioner*, 294 F. 2d 52, 54 (C.A. 9) (no desire or ability to compete) ; *Benjamin Levinson,* 45 T.C. 380, 390 (desire to compete, adequate health) ; *Rich Hill Insurance Agency, Inc.,* 58 T.C. 610, 618 (moved from area, no intention to compete) ; *J. Leonard Schmitz,* 51 T.C. 306, 320, affirmed on other grounds sub nom. *Throndson* v. *Commissioner,* 457 F. 2d 1022 (C.A. 9) (lived outside business area) ; *Balthrope* v. *Commissioner,* 356 F. 2d 28, 33 (C.A. 5) (poor health, useful knowledge of business) ; *Harry A. Kinney,* 58 T.C. 1038, 1043–1044 (ability to compete without desire to do so, poor health). Furthermore, the terms of the covenant were genuinely but realistically restrictive, extending over an 8-county area for a period of 4 years, the time during which Mrs. Hunt's competition would have been most damaging. Compare *Schulz* v. *Commissioner,* 294 F. 2d 52, 54 (C.A. 9).

Respondent has argued that the covenant not to compete was superfluous and consequently without economic substance inasmuch as under applicable California law a contract for the sale of a business includes an implied covenant that the vendor will not thereafter directly solicit the customers of the business thereby depriving the purchaser of the fruits of his bargain. *Brown* v. *Superior Court,* 34 Cal. Rptr. 559, 212 P. 2d 878, 881; *Harrison* v. *Cook,* 213 Cal. App. 2d 527, 29 Cal. Rptr. 269, 271 (2d Dist. Ct. App.) ; *Bergum* v. *Weber,* 136 Cal. App. 2d 389, 288 P. 2d 623, 625 (2d Dist. Ct. App.). He argues in this regard that Mrs. Hunt's ability to compete existed only with respect to past customers the solicitation of whom was barred by California law in any circumstances. However, the covenant itself was not thus limited, and since the vendor of the Butler-Hunt agency was the *estate* of Mrs. Hunt's deceased husband, not Mrs. Hunt in her individual capacity, there appears to be serious question under California law whether any covenant not to compete would be implied as against her. Cf. *California Linoleum & Shades Supplies* v. *Schultz,* 105 Cal. App. 471, 287 Pac. 980 (2d Dist. Ct. App.) (president of vendor corporation who signed agreement not personally bound). Accordingly, the covenant arising by operation of California law did not deprive the express covenant of Mrs. Hunt of economic reality since it was arguably "desirable to define precisely" the rights of the parties "rather than to guess what a court may decide" in the particular circumstances (see *Harvey Radio Laboratories, Inc.* v. *Commissioner,* 470 F. 2d 118, 119 (C.A. 1)), and "reasonable men, genuinely concerned with their economic future" (*Schulz* v. *Commissioner,* 294 F. 2d at 55) might well prefer to have their rights protected under the compulsion of an explicit convenant rather than to take a chance upon the uncertain coercive power of a possibly inapplicable implied contract.

Nor are we persuaded by respondent's empirical argument that the combined cost of the Consultation Agreement and the agency, $90,190, approximated the true value of the agency alone, indicating that the consideration assigned to the agreement was baseless. Respondent starts with the premise that as a general rule the business of any insurance agency is worth 1½ times its gross annual commissions, and he deduces therefrom that Butler-Hunt was worth $89,377.70,[6] or only $812.30 less than what petitioner paid. We do not accept respondent's initial assumption. While a factor of 1.5 may be appropriate in a particular factual context, it is not necessarily so here. Indeed, a comparison of the 11 bids submitted for the purchase of Butler-Hunt, each made at arm's length by a person or organization engaged in the insurance business, indicates estimates of Butler-Hunt's cash value ranging from $27,000 to $72,000. We are unwilling to ignore the obviously informed judgments reflected in these offers in favor of an abstract formula of valuation which does not have any solid support in the record. In this light we cannot conclude that the $40,750 paid by petitioner that was allocated to Butler-Hunt constituted inadequate compensation. Cf. *Henry P. Wager*, 52 T.C. 416, 419. The fact that O'Dell regarded the agency and the agreement as a single package for which he was willing to pay a particular price, however allocated, does not negate the economic reality of the actual allocation to the purchase contract arrived at through arm's-length bargaining between parties with adverse interests. *Harvey Radio Laboratories, Inc.* v. *Commissioner*, 470 F. 2d 118 (C.A. 1), affirming a Memorandum Opinion of this Court. Likewise, in these circumstances, we do not attach pivotal significance to the fact that the payments pursuant to the agreement comprised 54 percent of the price of the package. See *Bennett* v. *Commissioner*, 450 F. 2d 959 (C.A. 6), affirming per curiam a Memorandum Opinion of this Court (80 percent); *Eleanor M. Lutz*, 45 T.C. 615, 630, 633–634 (89 percent); *Benjamin Levinson*, 45 T.C. 380, 391 (97 percent).

Although in some circumstances a provision in a noncompetition covenant for the termination of payments upon the death of the covenantor has been regarded as evidence of the ordinary nature of such income to the covenantor,[7] the inverse does not necessarily hold true. The price of the covenant was $49,440, and the method and timing of payments to which Mrs. Hunt and petitioner agreed is not of controlling significance. *Henry P. Wager*, 52 T.C. 416, 419; *Benjamin Levinson*, 45 T.C. 380, 391.

---

[6] Respondent derives this figure by multiplying $55,751.80 by 1.5 and adding to the result $5,750, petitioner's initial bid for Butler-Hunt's fixed assets.

[7] See *Newman L. Ackerman*, 27 T.C.M. 1342, 1348.

Finally, the fact that Mrs. Hunt agreed to perform and in fact did provide only nominal services pursuant to the consultation provision of the agreement does not undermine a finding of economic substance in the agreement. See *Henry P. Wager*, 52 T.C. 416, 419. The consideration allocated to the Consultation Agreement reflected the value of the covenant not to compete as well as the consultation provision. There is no indication therein that anything in excess of a nominal portion of the consideration was properly attributable to Mrs. Hunt's employment.

This is perhaps a borderline case, but we are satisfied on the evidence before us that the scales tip in petitioner's favor.

*Decision will be entered for the petitioner.*