JOHN SADLER and PATSY SADLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sadler v. Commissioner
Docket No. 6042-78.
United States Tax Court
T.C. Memo 1980-542; 1980 Tax Ct. Memo LEXIS 39; 41 T.C.M. (CCH) 492; T.C.M. (RIA) 80542; December 8, 1980
*39 Ps purchased a restaurant under a sales agreement which contained no covenant not to compete. Held, Ps failed to adduce "strong proof" of the existence of such a covenant, and accordingly, they are not entitled to deduct any of the purchase price as payment for such a covenant. M. Ashley Dickerson, for the petitioners. Charles L. Eppright, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in the petitioners' Federal income taxes of $ 916.85 for 1973, $ 2,562.99 for 1974, and $ 5,288.11 for 1975. The sole issue for decision is whether the petitioners are entitled *40 to deduct any part of the purchase price of a business as payment for a covenant not to compete. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, John and Patsy Sadler, were husband and wife during the years at issue. At the time they filed their petition in this case, Mr. Sadler was a resident of Cascade, Idaho, and Mrs. Sadler was a resident of Eagle River, Alaska. The petitioners filed their joint Federal income tax returns for 1973, 1974, and 1975 with the Internal Revenue Service Center, Ogden, Utah. In January 1971, Mrs. Sadler began working at the La Casita Restaurant (La Casita) in Anchorage, Alaska. Such restaurant was owned by R & R Enterprises, Inc. (R & R Enterprises), an electing small business corporation taxable under subchapter S (sec. 1371 et seq. of the Internal Revenue Code of 1954[1]). The principal owners of R & R Enterprises were Herbert and Marion Richardson. Mr. Richardson was the driving force behind the La Casita, and he turned what had been a failing restaurant into one of the most prosperous Mexican food restaurants in the Anchorage area. His success was primarily due to his knowledge *41 of Mexican food, his acquaintance with his customers, and the long hours he put into the business. In May 1973, Mr. Richardson returned from a vacation in Oregon and Washington. He announced to Mrs. Sadler that he was moving to Grants Pass, Ore., where he planned to purchase a restaurant which he had seen there and which he subsequently purchased in 1973. Since he was moving to Oregon, Mr. Richardson offered to sell the La Casita to the petitioners. Negotiations commenced between the petitioners and the Richardsons, and a price of $ 75,000 for the La Casita was quickly agreed upon. The petitioners were to pay $ 10,000 down and were to execute a $ 65,000 promissory note in favor of the Richardsons. At no time did the parties to the sale discuss an allocation of the purchase price among specific assets and rights. During the course of their negotiations, the parties to the sale discussed the inclusion of a covenant not to compete. Initially, the petitioners desired that Mr. Richardson execute a covenant not to compete enforceable throughout the State of Alaska, *42 or enforceable within the 3d Judicial District of Alaska. However, after consulting with the Richardsons' attorney, they were advised that such a provision would most likely be unenforceable under Alaska law. Subsequently, the parties discussed, and the petitioners believed that the Richardsons had agreed to, a covenant providing that for 5 years, Mr. Richardson would not operate a Mexican food restaurant within 5 miles of the La Casita. Negotiations continued for several months, during which time Mr. Richardson made several trips between Alaska and Oregon. In July 1973, he announced that he was going to move to Oregon in several days, and that it would be necessary to prepare quickly the documents transferring ownership of the La Casita. Such documents were executed on July 24, 1973, and consisted of a bill of sale, a bulk sale affidavit, a promissory note, a security agreement, and a financing statement. None of these documents contained an express covenant not to compete. At the time these documents were prepared, the draftsman, the Richardsons' attorney, was not directed to include a covenant not to compete. The tangible assets purchased by the petitioners consisted of *43 used equipment with a fair market value of $ 28,312.50 and food supplies with a fair market value of $ 1,365.78. The sale included no real estate. After the sale, Mr. Richardson continued to own real and personal property in Alaska. In March 1974, when the petitioners' Federal income tax return for 1973 was being prepared, a portion of the price paid for the purchase of the La Casita was allocated to a covenant not to compete. Such allocation was computed by Mr. Sadler and the petitioners' accountant by subtracting from the $ 75,000 purchase price the fair market value of the used equipment and the food supplies. No portion of the purchase price was allocated to goodwill. On their 1973, 1974, and 1975 joint Federal income tax returns, the petitioners claimed deductions of $ 3,776.80, $ 9,064.32, and $ 9,064.34, respectively, attributable to an "Agreement not to compete for 5 years." On the corporate income tax returns filed by R & R Enterprises for 1973 and 1974, the sale of the La Casita was treated as a sale or exchange of property used in a trade or business, and all of the gain was reported as a long-term capital gain. The Richardsons' share of this gain was reported as *44 a longterm capital gain on their 1973 and 1974 joint Federal income tax returns. Both the Richardsons' returns and the petitioners' returns were prepared by or reviewed by the same accountant. In his notice of deficiency, the Commissioner disallowed in full the deductions claimed by the petitioners attributable to the "Agreement not to compete * * *." OPINION The sole issue for decision is whether the petitioners may deduct any portion of the payments made to the Richardsons in 1973, 1974, and 1975 as attributable to a covenant not to compete. The Commissioner contends that such deductions are not permissible since neither the bill of sale nor the supporting documents contain an express covenant not to compete and since the petitioners have failed to prove that the parties to the sale actually intended to agree on such a covenant; he points to the fact that such parties never discussed an allocation of any of the purchase price to such a covenant and asserts that such a covenant had no economic reality. The petitioners contend that a covenant not to compete had been negotiated and orally agreed upon by the parties and that it was omitted from the documents of sale solely due *45 to a clerical omission by the Richardsons' attorney. They further contend that such covenant did have economic reality, but they make no argument with respect to the failure to specifically allocate a portion of the purchase price to the covenant. Generally, where the seller of a business covenants not to compete with the purchaser for a specified period of time, the purchaser may amortize the amount paid for the covenant over its stated life. Sec. 167(a)(1); sec. 1.167(a)-3, Income tax Regs.; Annabelle Candy Co. v. Commissioner,314 F. 2d 1, 4, 8 (9th Cir. 1962), affg. a Memorandum Opinion of this Court. For such deductions to be allowable, there must exist an enforceable covenant not to compete. Mills Pharmaceuticals, Inc. v. Commissioner,57 T.C. 308, 313 (1971). In the present case, the agreement of sale, as embodied in the bill of sale and supporting documents, does not contain a covenant not to compete. However, the petitioners would have us conclude that such a covenant actually existed as a result of the oral agreement by the parties to the sale. See Lucas v. Commissioner,58 T.C. 1022, 1033 (1972). When the parties to *46 an agreement which does not contain an express covenant not to compete attempt to establish that such a covenant was actually a part of their agreement, this Court, as well as the Ninth Circuit (to which an appeal of this case would lie), has adopted the rule that "strong proof" must be shown by them if they seek to establish a position at variance with the language of their agreement. Schulz v. Commissioner,294 F. 2d 52, 55 (9th Cir. 1961), affg. 34 T.C. 235 (1960); Ullman v. Commissioner,264 F. 2d 305, 308 (2d Cir. 1959), affg. 29 T.C. 129 (1957); Lucas v. Commissioner,supra at 1032; Schmitz v. Commissioner,51 T.C. 306, 318 (1968), affd. sub nom. Throndson v. Commissioner,457 F. 2d 1022 (9th Cir. 1972). The evidence adduced by the petitioners does show that the parties to the sale did discuss a covenant not to compete, that during the negotiations, Mr. Richardson appeared to agree to such a covenant, that the petitioners considered such a covenant to be essential to the sale, and that they believed that Mr. Richardson had agreed to the inclusion of the covenant *47 in the agreement of sale. However, the evidence clearly establishes that at the time these documents were prepared, the intention to include such a covenant was never expressed to the draftsman. The petitioners attribute the failure to include a covenant to the hasty manner in which the final documents were prepared. Although the failure may have been due to such haste, it may also have been due to the fact that on further reflection, Mr. Richardson did not intend to agree to such a covenant. The price for the purchase of the La Casita was more than $45,000 in excess of the value of the tangible assets received by the petitioners, but we cannot assume that such $ 45,000 was attributable to a covenant not to compete. The sale of the business may have included some goodwill, and the petitioners have failed to prove that none of such $ 45,000 was attributable to goodwill. See United Finance & Thrift Corporation of Tulsa v. Commissioner,31 T.C. 278, 286 (1958), affd. 282 F. 2d 919 (4th Cir. 1960), cert. denied 366 U.S. 902 (1961). Had the parties to the sale actually intended to include a covenant not to compete, it is likely that they would *48 have considered and discussed the amount of the purchase price to be allocated to the covenant; their failure to discuss any such allocation is evidence that they did not intend to include such a covenant. Annabelle Candy Co. v. Commissioner,314 F. 2d at 7; Rich Hill Insurance Agency, Inc. v. Commissioner,58 T.C. 610, 618 (1972). Moreover, since Mr. Richardson expected to operate a restaurant in Oregon, it was unlikely that he would return to Alaska and compete with the petitioners. He did continue to own property in Alaska and could return at any time, but the likelihood of his doing so was not sufficient to cause the petitioners to pay $ 45,000 for a covenant against his competition or to cause the Richardsons to agree to treat that amount as allocable to such a covenant. In addition, the fact that on their income tax returns, the Richardsons treated none of the payments as allocable to a covenant suggests that, whatever they may have said during the negotiations, they later changed their minds. See Rich Hill Insurance Agency, Inc. v. Commissioner,supra at 618.The circumstances suggest that on reflection, Mr. Richardson *49 may have concluded that a covenant not to compete was not in his best interest and that the failure to instruct his attorney to include such a covenant in the agreement of sale may not have been accidental. We are satisfied that the petitioners intended to have a covenant not to compete and that they genuinely believed that such a covenant had been accepted by the Richardsons, and we are sorry for them that the covenant was not included in the sales agreement. However, "when a taxpayer has failed to arrange his affairs so as to minimize his taxes, he cannot expect the Court to do it for him nuncprotunc."Balthrope v. Commissioner,356 F. 2d 28, 34 (5th Cir. 1966), affg. a Memorandum Opinion of this Court. On this record, the petitioners have failed to establish by "strong proof" that the parties to the sale intended to agree on a covenant not to compete. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩