JOHN L. DANEHY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Danehy v. Commissioner
Docket No. 1493-73.
United States Tax Court
T.C. Memo 1974-281; 1974 Tax Ct. Memo LEXIS 38; 33 T.C.M. (CCH) 1306; T.C.M. (RIA) 740281; October 31, 1974, Filed. John L. Danehy, pro se. Barry J. Laterman, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent has determined a deficiency of $2,938.53 in petitioner's income tax for 1969. The two issues presented for decision are: (1) whether petitioner is entitled to a deduction for the amortization of a covenant not to compete, and (2) whether respondent properly disallowed $1,087 of petitioner's deduction of $2,717 for customer entertainment. FINDINGS *39 OF FACT Petitioner is an unmarried taxpayer who resided in Cambridge, Massachusetts, at the time he filed the petition herein. He filed his original and amended Federal individual income tax returns for the calendar year 1969 with the director, Internal Revenue Service Center, Andover, Massachusetts. During 1969, petitioner was engaged in the insurance business at 2294 Massachusetts Avenue, Cambridge, Massachusetts. Prior to July, 1969, George R. Stone (hereinafter Stone) was also engaged in the insurance business, doing business at the George Stone Insurance Agency. Stone's agency was located at 1927 Massachusetts Avenue in Cambridge. On or about July 3, 1969, petitioner and Stone entered into an agreement (hereinafter the agreement) for the sale of Stone's business to petitioner. Pertinent parts of the agreement are as follows: 1. The SELLER agrees to sell and the BUYER agrees to buy all of the right, title and interest in and to the insurance business presently being conducted by the SELLER at 1927 Massachusetts Avenue, Cambridge, Massachusetts, including the good will, list of customers, daily reports, expiration records, assured line records, and such other documents, *40 records, and correspondence relating to the said business as may be necessary to service current accounts, which coincidental with this sale the SELLER agrees to deliver intact to the BUYER, and for which the BUYER agrees to pay to the SELLER the sum of TWENTY-EIGHT THOUSAND ($28,000.00) DOLLARS in the manner following: a. $1,000.00 upon the execution of this agreement, the receipt whereof is hereby acknowledged; b. $6,000.00 on July 7, 1969; c. $21,000.00 by 3 equal annual installments on July 31 of each year commencing with the year 1970. d. The unpaid balance shall carry accrued interest at the rate of FIVE (5%) PERCENT per annum payable at the same time and along with each said annual installment. e. It is understood by the parties that the foregoing method of payment is arranged so as to give the SELLER an income tax advantage and it is agreed that the BUYER shall have no right to vary or accelerate the foregoing method of payment except as the same may be permitted by the SELLER in writing. * * * 4. For a period of five (5) years commencing July 7, 1969, SELLER does hereby agree that he will not, directly or indirectly by himself or in behalf of any firm, *41 association, partnership or corporation engage in the general insurance brokerage business or any phase thereof within a radius of twenty (20) miles from the City of Cambridge nor will he at any time solicit the customer accounts to be conveyed hereby. Stone's reasons for selling his business were threefold: (1) three or four major insurance companies with which he did business notified him that they were terminating the relationship; (2) a woman who had operated the agency for over 12 years quit; and (3) his health was declining and he was under a doctor's care. For these reasons, Stone wanted to retire from the insurance business and devote his time to his real estate business, hence he had no objections to the covenant not to compete contained in the agreement. His lawyer, who drafted the agreement, told him it was included as a matter of form. By June, 1971, Stone completed all his business in Cambridge and moved to Meredith, New Hampshire. Petitioner was aware of all Stone's reasons for selling and knew that Stone intended to devote himself solely to his real estate business in the future. Petitioner also knew that Stone had purchased a summer home, although he did not *42 know that Stone was going to leave the Cambridge area completely. Despite this knowledge, petitioner would not have purchased Stone's business without the non-compete covenant. He regarded the covenant as his only complete assurance that Stone would not re-enter the insurance business. In signing the agreement as drafted by Stone's attorney, petitioner received no independent legal advice. Pursuant to the agreement, petitioner paid Stone $7,000 in 1969 and deducted this amount on his 1969 Federal income tax return as having been made for the covenant not to compete. Respondent disallowed the entire deduction as well as $1,087 of petitioner's claimed $2,717 deduction for customer entertainment (meals), claiming that petitioner has failed to meet the substantiation requirements of sections 274(a) and (d). [1]
ULTIMATE FINDING OF FACT No part of the $28,000 purchase price was intended by petitioner and Stone to be allocated to the covenant not to compete, nor should any part of such purchase price be allocated on the basis of economic reality. OPINION Petitioner, purchaser *43 of Stone's insurance agency, claims that the full $28,000 purchase price is allocable to the covenant not to compete because it was the only thing of value which he purchased and that therefore he is entitled to deduct the $7,000 paid to Stone in 1969. He relies on the well-established rule that amounts paid for a covenant are ordinary income to the covenantor and may be amortized over the period of their useful life by the purchaser. J. Leonard Schmitz, 51 T.C. 306, 313 (1968), affirmed sub nom. Throndson v. Commissioner, 457 F.2d 1022 (C.A. 9, 1972). See also section 1.167(a)-3, Income Tax Regs. Respondent counters by arguing that the covenant had no value independent of the goodwill and other intangibles sold in the transaction; hence, the full $28,000 payment was a capital expenditure which has an indeterminate useful life and is not amortizable. Petitioner has the burden of proof. See General Insurance Agency, Inc. v. Commissioner, 401 F.2d 324, 329 (C.A. 4, 1968), affirming T.C. Memo. 1967-143; Rule 142(a), Tax Court Rules of Practice and Procedure.
Clearly, intangibles may be amortized under section 167(a) so long as *44 they have a usefulness in the business for a limited number of years, "the length of of which can be estimated with reasonable accuracy" but "no deduction * * * is allowable with respect to good will." Sec. 1.167(a)-3, Income Tax Regs. Thus, in this well-traversed area of the law, our task herein is to make the purely factual determination of whether any portion of the $28,000 purchase price (and consequently of the $7,000 partial payment presently before us) is allocable to the covenant. After carefully reviewing all the facts, we find that no part of the price is so allocable; thus, we uphold respondent's disallowance. While petitioner has cited cases which propose both the "severability theory" and the "economic reality theory" (see Rich Hill Insurance Agency, Inc., 58 T.C. 610, 616 (1972)), we need not base our opinion in this case on either theory exclusively. Under either, petitioner must fail. Moreover, the First Circuit Court of Appeals, to which an appeal in this case would lie, [2] has stated that the proper rule is that - *45 a taxpayer may vary the allocation stated, or implicit, in the agreement by, but only by, establishing that the parties, who have competing tax interests in the matter, agreed on a different figure when they signed the contract. [Leslie S. Ray Insurance Agency, Inc. v. United States, 463 F.2d 210, 212 (C.A. 1, 1972). See also Harvey Radio Laboratories, Inc. v. Commissioner, 470 F.2d 119 (C.A. 1, 1972), affirming T.C. Memo. 1972-85. Where no separate consideration is provided for in the agreement, this means that the purchaser cannot "unilaterally attribute part of the purchase price to the covenant and amortize the cost over its term, without "strong proof" that the parties intended to attribute that separate value to the covenant." Harvey Radio Laboratories, Inc. v. Commissioner, supra, 470 F.2d at 119. Under this test, petitioner must fail, for he has introduced no proof, must less the "strong proof" required, that he and Stone intended to allocate a separate value to the covenant. In the first place, there is no allocation in the agreement of a part of the purchase price to the covenant. Thus, we start our analysis *46 with "pretty good evidence that no such allocation was intended." Annabelle Candy Co. v. Commissioner, 314 F.2d 1, 7 (C.A. 9, 1962); see Rich Hill Insurance Agency, Inc., supra, 58 T.C. at 618.Second, no evidence was presented to us that petitioner and Stone ever discussed allocating any part of the purchase price to the covenant. See General Insurance Agency, Inc. v. Commissioner, supra.It was neither separately bargained for nor treated independently in whatever negotiations took place. Compare Harry A. Kinney, 58 T.C. 1038 (1972). Indeed, from the record we can find no indication that petitioner ever broached this subject with Stone. In fact, he even testified that when he read the agreement, drafted by Stone's attorney, it seemed acceptable to him and he signed it. Perhaps it would have been advisable for petitioner to have secured competent tax advice before he acted, but in such a case we cannot rearrange the agreement for petitioner in order to minimize his taxes. Balthrope v. Commissioner, 356 F.2d 28, 34 (C.A. 5, 1966), affirming T.C. Memo. 1964-31. Finally, it seems clear that there was *47 no reason for the parties to have considered that the convenant had any value. Petitioner knew that Stone was no longer in good health, that the woman who had operated his agency for 12 years had quit, and that Stone's relationship with three or four of his insurance companies had been severed. In such a situation, it would have been entirely unrealistic for petitioner to fear Stone's re-entry into the insurance business. Thus, the covenant lacked that "independent basis in fact or some arguable relationship with business reality such that reasonable men, genuinely concerned with their economic future, might bargain for such an agreement." Schulz v. Commissioner, 294 F.2d 52, 55 (C.A. 1961), affirming 34 T.C. 235 (1960). Certainly, as petitioner argues, without the covenant he would not have been completely protected but, whatever possibility may have existed that Stone would re-enter the business, it is not enough to support a holding that there was a bilateral intention to allocate part of the purchase price to the covenant or that any such allocation should otherwise be made. Cf. Rich Hill Insurance Agency, Inc., supra, 58 T.C. at 618-619. *48 It thus appears that, whether we confine ourselves to the "intention" test, as the First Circuit does ( Harvey Radio Laboratories, Inc. v. Commissioner, supra ), or whether we apply the "economic reality" test, the totality of the evidence requires us to hold that petitioner has failed to adduce the "strong proof" necessary to enable him to prevail. See White Farm Equipment Co., 61 T.C. 189, 211 (1973), on appeal (C.A. 3, 1974). In his petition and at trial, petitioner contested respondent's disallowance of all but $1,630 of his claimed $2,717 deduction in 1969 for customer entertainment.However, petitioner has not raised this issue in either his opening or reply briefs and we will consider it to have been conceded. In any event, it is clear that there is an utter lack of that quantum of evidence in the record which would enable petitioner to carry his burden of proof. Decision will be entered for the respondent. Footnotes
1. Unless otherwise inidicated, all section references are to the Internal Revenue Code of 1954. ↩
2. See Jack E. Golsen, 54 T.C. 742 (1970), affd. 445 F.2d 985 (C.A. 10, 1971), cert. denied 404 U.S. 940↩ (1971).