EDMOND E. MASEEH AND DOLORES MASEEH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4762–66.   Filed April 7, 1969.

*Howard S. Feldman,* for petitioner.
*Edward Simpson,* for respondent.

20

OPINION

The petitioner contends that the amount of $50,000 stated in the separate agreement not to compete as being the consideration for such agreement was not in reality such and taxable as ordinary income as determined by the respondent, but, rather, constituted payment for goodwill which is taxable as long-term capital gain.

It has been held in a long line of cases that when the parties to a transaction such as the one here involved have specifically entered into an agreement not to compete and have therein stated the consideration therefor, strong proof must be adduced by them to overcome that declaration. *Ullman* v. *Commissioner*, (C.A. 2) 264 F.2d 305, affirming 29 T.C. 129; *Hamlin's Trust* v. *Commissioner*, (C.A. 10) 209 F.2d 761, affirming 19 T.C. 718; *Rogers* v. *United States*, (C.A. 9) 290 F.2d 509; *Schulz* v. *Commissioner*, (C.A. 9) 294 F.2d 52, affirming 34 T.C. 235; *Barran* v. *Commissioner*, (C.A. 5) 334 F.2d 58, affirming on this issue 39 T.C. 515; *Montesi* v. *Commissioner*, (C.A. 6) 340 F.2d 97, affirming 40 T.C. 511; *Balthorpe* v. *Commissioner*, (C.A. 5) 356 F.2d 28, affirming a Memorandum Opinion of this Court; and *J. Leonard Schmitz*, 51 T.C. 306. In the *Schulz* case, the court after concurring in the strong-proof requirement stated in part:

However, we think that the covenant must have some independent basis in fact or some arguable relationship with business reality such that reasonable men, genuinely concerned with their economic future, might bargain for such an agreement.

The petitioner testified that in his first discussions with Laura Scudder's he offered to sell his distributing business for $75,000 over and above an amount to be paid for inventories, equipment, and accounts receivable, and that therefore $75,000 of the amount which he received represented payment for goodwill, consisting of an organization of experienced personnel, customer lists, and distributorships, all of which he stated were valuable. Sometime prior to the execution of the bill of sale the purchaser requested that $25,000 of the $75,000 figure be allocated as selling price of the equipment over and above the amount of $60,716.35 which the petitioner had asked for the equipment, and that $50,000 of the $75,000 figure be allocated as consideration for the separate agreement not to compete. The petitioner acceded to these requests and signed the separate agreement not to compete which recited the consideration of $50,000. However, he claims that the agreement not to compete had no independent significance or economic

reality and that therefore the $50,000 should not be treated as consideration therefor, but should be treated as proceeds from the sale of goodwill. He stated that he agreed to this allocation in ignorance of the tax consequences which would flow therefrom, although he concedes that no representative of Laura Scudder's at any time made any representations to him concerning the tax consequences of the agreement not to compete.

Upon a careful consideration of the entire record, it is our conclusion that the petitioner has not met his burden of showing that the agreement not to compete did not have some independent basis in fact or business reality, and that such agreement, including the recited consideration, did not represent the actual intention and agreement of the parties.

In support of his contention that the agreement not to compete had no economic reality, the petitioner stated that he felt that after the sale of his business he could not in any event have entered into competition with such accepted brand names as Laura Scudder, Brach Candy, and Weston Biscuit and have "done quite significant damage." Nevertheless, considering his many years of experience, the fact that he was known to the various store owners and purchasing agents, the fact that he was highly regarded by his competitors, and the fact that his personal efforts had contributed to the substantial growth of his business, we cannot conclude that it would have been unreasonable for Laura Scudder's, out of concern for its economic future, to have required an agreement not to compete. Indeed, the above factors tend to show a genuine business reason for the agreement not to compete. See *Schulz* v. *Commissioner, supra.*[6]

The petitioner also testified that he had agreed to work for Laura Scudder's and had no intention of going back into business. However, these facts do not establish that there was no economic reality to the agreement not to compete. There always remained the possibility that the petitioner might change his mind, leave Laura Scudder's, and engage in competition, and this is recognized by the terms of the agreement. We note that after 3 years the petitioner did leave Laura Scudder's to become president of another company which manufactured snack food items.

The fact that it was Laura Scudder's which requested that $50,000 be assigned to the agreement not to compete and the fact that the petitioner may have been ignorant of the tax consequences of the

[6] Moreover, unlike the situation presented in the *Schulz* case, here the restrictions in the agreement were not minimal in time or area. The petitioner was precluded from competition in Arizona, California, and Nevada for a period of 5 years, or 2 years plus the duration of his employment with Laura Scudder's, whichever might be longer.

agreement are not determinative. As stated in *Hamlin's Trust* v. *Commissioner*, *supra:*

But the effectiveness taxwise of an agreement is not measured by the amount of preliminary discussion had respecting it. It is enough if parties understand the contract and understandingly enter into it. * * * It is reasonably clear that the sellers failed to give consideration to the tax consequences of the provision, but where parties enter into an agreement with a clear understanding of its substance and content, they cannot be heard to say later that they overlooked possible tax consequences. * * *

To similar effect, see *Balthorpe* v. *Commissioner*, *supra.*

We think there can be no doubt that the petitioner understood the agreement when he entered into it. He testified that he read the agreement, that there was some discussion with regard thereto, that he felt bound by it, and that when he left the employ of Laura Scudder's he took a position outside the geographical confines of the agreement.

None of the instruments which were executed allocated any of the selling price to goodwill; indeed, goodwill was not mentioned therein. And, although the petitioner claims that $75,000 of the purchase price constituted payment for goodwill, he did not testify that there was at any time any agreement to that effect between him and Laura Scudder's. Furthermore, although there is evidence directed toward the value of goodwill, it is not sufficient to fix the amount thereof. Upon this record we cannot determine what amount, if any, was paid for goodwill. If there was any payment for goodwill such payment may be included in the amount of $85,716.35 recited as the price of equipment and treated by the petitioner as such with consequent long-term capital gain treatment. As stated above, the petitioner at the request of the purchaser, agreed to the allocation to such equipment of $25,000 over and above the petitioner's asking price for such equipment, which asking price itself appears to have been substantially in excess of both original and depreciated cost. However, we go no further here than to hold that it has not been established that any portion of the $50,000 in question constituted payment for goodwill.

On brief the respondent relies, among other cases, upon *Commissioner* v. *Danielson*, (C.A. 3) 378 F.2d 771, reversing 44 T.C. 549, in which it was held that a party may challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc. In view of our conclusion above that the petitioner has not shown by strong proof that the $50,000 in question did not represent consideration for the agreement not to compete, we find it unnecessary to consider the applicability of the more stringent rule set forth in the *Danielson* case.

*Decision will be entered for the respondent.*