HERSCHEL E. PERKINS AND GLORIA J. PERKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; FRANK A. MERCADO AND NICOLLETTA E. MERCADO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Perkins v. Commissioner
Docket Nos. 4794-76, 5032-76.
United States Tax Court
T.C. Memo 1979-356; 1979 Tax Ct. Memo LEXIS 173; 39 T.C.M. (CCH) 46; T.C.M. (RIA) 79356; September 5, 1979, Filed; As Amended September 7, 1979 *173 A contract for the sale of a business allocated part of the purchase price to a covenant not to compete. Originally, this amount was to be allocated to goodwill but the purchaser changed the allocation without the seller being aware of the change. Such an allocation by the purchaser was necessary before the purchase could be financed. Held, the allocation to the covenant not to compete did not reflect the intent of the parties. Value of goodwill and covenant determined. Herschel E. Perkins, pro se in docket no. 4794-76. D. Wayne Jeffries and Michael W. Berwind, for the petitioners in docket no. 5032-76. Warren N. Nemiroff, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: In these consolidated proceedings, respondent determined deficiences in petitioners' Federal income taxes for the calendar year 1973 as follows: Docket No.
Petitioners
Deficiency
4794-76
Herschel E. and Gloria J. Perkins
$4,172.60
5032-76
Frank A. and Nicolletta E. Mercado [1]
247.68
The only issue presented for our consideration *174 is whether any or all of $23,225 of the $50,000 sales price of a business sold by Herschel E. Perkins to Frank A. Mercado in 1973 was paid for a covenant not to compete or was paid for goodwill. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Herschel E. and Gloria J. Perkins, husband and wife, resided in Oakland, California at the time they filed their petition herein and filed a joint Federal income tax return for the taxable year 1973. References to Perkins are hereafter solely to Herschel Perkins. Petitioners, Frank A. Mercado and Nicoletta E. Mercado (hereafter Nicoletta), resided in Hayward, California at the time they filed their petition herein and filed a joint Federal income tax return for the taxable year 1973. References to Mercado are hereafter solely to Frank A. Mercado. Perkins owned an office building in Hayward, California from which he operated BayView/Regal Printing Service (hereafter BayView) and King Menus, Inc. (hereafter King Menus). BayView had only two employees (plus Perkins) and printed all types of documents, letter-heads, *175 and cards. King Menus specialized in printing menus. Perkins had been in business for about twenty-five years before he sold BayView to Mercado. In January 1973, Mercado offered to purchase BayView and to rent the Hayward office from Perkins. Originally, Perkins asked for a purchase price of $55,000 for the purchase of equipment, goodwill and supplies. After negotiations, however, it was orally agreed that: (1) the purchase price for BayView was to be $50,000 and the date of sale was to be fixed after Mercado was able to borrow $55,000 guaranteed by the Small Business Administration (hereafter SBA) from the Bank of America, Main Branch, San Leandro, California; (2) Perkins would immediately relinquish control of BayView to Mercado upon payment of the agreed upon purchase price; (3) Perkins would continue to operate King Menus at the Hayward office building until a new building and printing equipment were ready, at which time he would vacate the premises of the building to Mercado; and (4) Mercado was to prepare or to have prepared two documents, a rental agreement for an eight year lease on the Hayward office building and a purchase agreement on BayView. Mercado also insisted *176 that the agreement contain a covenant not to compete; he would not have purchased BayView without it because of his concern that Perkins could have competed with him using the equipment in King Menus and that BayView's customers would remain with Perkins.Many, if not most, of BayView's customers did, in fact, remain as its customers after the sale. Perkins agreed to the covenant because he believed it was necessary to protect the goodwill in the business. Neither Perkins nor Mercado sought or received the advice of counsel in connection with the purchase, primarily because of Perkins' desire not to incur the additional expense of an attorney. Towards the end of January, Mercado sought assistance from the National Economic Development Agency (NEDA) in San Jose, a subcontractor for the SBA which assists minority businessmen with SBA-guaranteed loans. NEDA referred Mercado to Liborio Canales, Jr., a business consultant employed by NEDA, to assist him in acquiring funds for the purchase. Mercado discussed the business with Canales and Canales inspected the business premises. Canales told Mercado that it would be necessary to have a written purchase agreement before the purchase *177 of the business could be arranged. Mercado then typed up a purchase agreement for BayView using as a model an agreement drafted by an attorney involving a prior transaction in which Mercado had purchased another printing business. The agreement also incorporated the covenant not to compete, as had been agreed to in the prior oral agreement. The model agreement did not contain a provision for an allocation of part of the price to goodwill, however, and such a provision was placed into the agreement after discussions with Perkins. The agreement then allocated to "Seller's good will and going concern value $23,225.00," and the remaining $26,775 to the "depreciated in use value of the equipment and fixtures." No amount of the purchase price was allocated to the covenant not to compete. Perkins was aware of the tax consequences of the allocation, although Mercado was not. Both parties were aware of the legal rights created by the covenant not to compete. When Mercado showed Perkins the draft of the agreement, Perkins expressed agreement with the draft except for changes in paragraphs 7 and 9 (not relevant here). Both parties initialed these changes. Mercado made an additional minor *178 change in paragraph 10 which he then initialed in Perkins' presence. Both parties signed the agreement but understood that it was tentative because it was subject to financing approval by the SBA. Because the parties were unsure if and when SBA guarantees for the loan would be forthcoming, the agreement was left undated. After signing the agreement, Mercado showed the contract to Canales for his approval. Canales told Mercado that he felt that the contract was unsatisfactory because he did not believe the business had $23,225 worth of goodwill. Canales was especially concerned because the SBA had been encountering a problem of inflated goodwill being attached to loan applications for the purchase of businesses. Canales suggested that Perkins reduce the price of the business in order to lower the amount allocated to goodwill, but Perkins refused to do so. Canales then told Mercado to assign the $23,225 value originally designated to goodwill to the covenant not to compete. Canales provided Mercado with the wording to be incorporated into the agreement in order to accomplish this purpose. That evening, Nicoletta printed the added language into the purchase agreement: "Seller's *179 good will and going concern value $23,225.00, as payment for covenant not to compete described in paragraph thirteen." [Nicoletta's printed additions are emphasized.] Mercado was unaware of the tax consequences that might follow as a result of the change. Mercado did not discuss the added language with Perkins. Although Perkins briefly saw the copy with the change, he overlooked the addition and was unaware of it. Neither party ever initialed the change, as they had done earlier. After the change was made, Mercado showed the document to Canales who then approved the agreement. On or about April 30, 1973, Frank and Nicoletta presented Perkins with the modified purchase agreement and a check for $50,000. Perkins made no comment when presented the agreement and the parties then signed it. Perkins reported the amounts he received as capital gain while the Mercados claimed the $23,225 (amortized over five years) as deductions against ordinary income as payments for a covenant not to compete.Respondent, in order to protect the revenue, determined that the $23,225 is taxable as ordinary income to the seller Perkins and also that it is not deductible by the buyer Mercado. *180 Respondent takes the position here that the $23,225 should be allocated to goodwill. OPINION The issue for our decision is whether the $23,225 should be allocated to a covenant not to compete, as claimed by the purchaser Mercado, or should be allocated instead to goodwill, as claimed by the seller Perkins and respondent. [2]
*181 The parties are somewhat at odds over the proper test to be applied in evaluating the allocation to the covenant.Respondent, in part, relies on the "severability" test which focuses on the question of whether the covenant could be segregated and valued independently of other assets transferred, Burke v. Commissioner,18 T.C. 77 (1952); Michaels v. Commissioner,12 T.C. 17 (1949). Respondent also cites the test set forth by the Ninth Circuit in Schulz v. Commissioner,294 F.2d 52 (9th Cir. 1961), affg. 34 T.C. 235 (1960).That court held that to support an allocation "the covenant must have some independent basis in fact or some arguable relationship with business reality such that reasonable men, genuinely concerned with their economic future, might bargain for such an agreement." Mercado correctly notes that we no longer apply the severability test. Rather, our present approach, which we believe also comports with that of the Ninth Circuit (to which an appeal in both dockets would lie), is to first determine whether the agreement reflected the intent of the parties to allocate a certain value to the covenant and *182 then determine whether that agreed value has sufficient economic reality to support the allocation. See Lazisky v. Commissioner, 72 T.C.     (1979); Spector v. Commissioner,71 T.C. 1017 (1979); O'dell & Co. v. Commissioner,61 T.C. 461, 468 (1974); Baldarelli v. Commissioner,58 T.C. 1022, 1033, 1037 (1972); Maseeh v. Commissioner,52 T.C. 18, 22-23 (1969). We have recently applied this approach in two cases dealing with covenants not to compete and which were appealable to the Ninth Circuit. Halbert v. Commissioner,T.C. Memo. 1978-88; Malgoire v. Commissioner,T.C. Memo. 1978-29. See also General Insurance Agency, Inc. v. Commissioner,401 F.2d 324 (4th Cir. 1968). It is clear that Perkins intended the entire $23,225 to be allocated to goodwill and we have found that he was unaware of the change in the agreement [3] made unilaterally and without any negotiation by the Mercados allocating the amount to a covenant not to compete. We cannot say what Perkins would have agreed to had he negotiated or been aware that an allocation was necessary. The evidence *183 also shows that Mercado was originally unconcerned about the allocation, never understood fully the implications of the change, and originally signed an agreement allocating no amount to the covenant. Nonetheless, Mercado changed the contract because Canales did not believe the SBA would approve the loan application based upon the original agreement. Without SBA approval, the purchase would not have been financed and it would appear, therefore, that some allocation in the contract would have had to have been made by the parties if the parties still wanted to accomplish the sale and purchase. Based upon these facts, we cannot say that either agreement represented the actual intention of the parties. [4]
*184 Having determined that the agreement did not reflect the intent of the parties, all the parties agree that we must now determine the value of the goodwill and the covenant not to compete. Respondent and Perkins both argue that the entire amount should be allocated to goodwill while Mercado contends that the entire amount should be allocated to the covenant not to compete. We agree with the parties that an allocation is proper. In Kinney v. Commissioner,58 T.C. 1038 (1972), we found that the seller and purchaser failed to allocate any of the consideration to the covenant not to compete because they could not agree on the amount to be allocated. Although an important consideration in our making an allocation was the agreement between the parties that the covenant had a value, [5] and the case is therefore distinguishable, this is neither an instance in which both parties saw no need to value the covenant separately, Baldarelli v. Commissioner,supra, nor even where neither party assigned a value to the covenant, Annabelle Candy Co. v. Commissioner,supra.Rather, we have a situation in which one party assigned no value to the covenant *185 (to which the other party originally agreed) and the other party, without the knowledge of the first, later assigned a value upon the advice of his consultant because such assignment was necessary for obtaining financing.
We must now determine whether the covenant not to compete had "some independent basis in fact or some arguable relationship with business reality" such that it could support an allocation, Schulz v. Commissioner,supra. An allocation was made in the final agreement not because of an awareness of tax consequences, but because it was necessary in order to obtain financing. Although Mercado originally agreed to no allocation to the covenant [6] he always deemed it necessary to insure BayView's continued success. Perkins had the ability to compete with Mercado and testified that BayView's customers would have stayed with him had he remained in business. In O'Dell & Co. v. Commissioner,supra, at 468, we stated that, in general, where the previous owner could effectively compete for the conveyed business's prior customers, a covenant not to compete has economic substance. *186 On these facts, we hold that the covenant not to compete had economic reality. But its value must be viewed in the context of the entire agreement and the prospects of possible competition. O'Dell & Co. v. Commissioner,supra, at 468-469 and cases cited. Mercado (BayView) was to be Perkins' tenant and signed an eight year lease. While it is true that Mercado was personally liable on the lease, the record supports Perkins' contention that he looked to BayView's continued success for payment. Therefore, the possibility of Perkins competing with Mercado after the sale is not as significant as it might otherwise have been. Moreover, most of BayView's customers remained with it after the sale.This clearly establishes that BayView was purchased as an on-going business and that customers *187 looked to its name or location in doing business with it. On these facts, we believe that the principal element of the amount paid for the intangible assets of the business was for its goodwill and going concern value. Cf. Lafayette Extended Care, Inc. v. Commissioner,T.C. Memo. 1978-233; and cases cited therein. Cf. also Manhattan Co. of Virginia, Inc. v. Commissioner,50 T.C. 78 (1968). It is also obvious that Canales never attempted to value the covenant. After deciding there was no goodwill, he simply attached that portion of the purchase price not attributed to equipment to the only other intangible item (besides goodwill) in the contract, the covenant not to compete. In fact, since Canales did not believe the business was worth $50,000 it follows from this that he did not believe the covenant was worth $23,225. We hold on the basis of the record that $5,000 should be allocated to the covenant not to compete and the remainder to goodwill and going concern value. Cf. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Decisions will be entered under Rule 155.
Footnotes
1. Nicoletta was erroneously spelled with two "1's" in the petition and caption.↩
2. Both the Court of Claims and Third Circuit apply the parol evidence rule to determine the evidentiary weight to be given to such a contract.That rule states that a party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, or the like. Commissioner v. Danielson,378 F.2d 771 (3rd Cir. 1967), cert. denied 389 U.S. 858 (1967), revg. 44 T.C. 549 (1965); Davee v. United States,195 Ct. Cl. 184, 444 F.2d 557 (1971). See Lea, Inc. v. Commissioner,69 T.C. 762 (1978). Respondent urges us to adopt Danielson but then argues Danielson would not apply in this case because the agreement is ambiguous.Although we have consistently refused to adopt Danielson except in cases appealable to the Third Circuit (and we refuse to adopt it here), in Freeport Transport, Inc. v. Commissioner,63 T.C. 107 (1974), we held that the Danielson rule does not apply in cases in which both parties to an agreement were before the court and respondent challenged the form of the transaction. See also Lafayette Extended Care v. Commissioner, T.C. Memo. 1978-233↩, footnote 7.
3. Perkins strenuously argues that he never signed the second agreement which contained the allocation to the covenant and that the Mercados must have made the change after he signed the agreement.We have found as a fact, however, that he did sign the agreement after the change. ↩
4. The Mercados contend that the "strong proof" rule of Ullman v. Commissioner,264 F.2d 305 (2d Cir. 1959), affg. 29 T.C. 129 (1957), adopted by the Ninth Circuit in Schulz v. Commissioner,supra, applies and that this Court should respect the allocation in the agreement in the absence of strong proof to the contrary. Spector v. Commissioner,supra.Respondent contends that the strong proof rule does not apply in cases in which respondent (as opposed to the taxpayer) is challenging the formal means which the parties used. We do not need to determine the correct position since, in any event, we believe Perkins (and respondent) have shown by strong proof that the agreement does not reflect the intent of the parties. Cf. O'Dell & Co. v. Commissioner,supra↩.
5. See Baldarelli v. Commissioner,supra,↩ at 51.
6. Cf. O'Dell & Co. v. Commissioner,supra, at 468; Maseeh v. Commissioner,52 T.C. 18, 24↩ (1969) (the fact that a party is ignorant of the tax consequences to an agreement clearly does not mean the allocation has no substance but where both parties consider the tax consequences, the allocation is entitled to somewhat greater weight).