SHILA D. MacDONALD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; SCOTT D. MacDONALD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; BETTY JOS BEAUTY SALON, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
MacDonald v. Commissioner
Docket Nos. 2670-80, 2671-80, 3035-80.
United States Tax Court
T.C. Memo 1982-270; 1982 Tax Ct. Memo LEXIS 480; 43 T.C.M. (CCH) 1381; T.C.M. (RIA) 82270; May 17, 1982. Terry S. Shilling and Robert J. Fetterman, for the petitioners. Barbara A. McCaskill, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: In these consolidated cases, respondent determined a deficiency in petitioner Betty Jos Beauty Salon, Inc.'s (Docket No. 3035-80) Federal income tax for the year 1976 of $ 20,664.02. Respondent further determined that petitioners Shila D. MacDonald and Scott D. MacDonald (Docket Nos. 2670-80 and 2671-80, respectively) were liable as transferees of the assets of Betty Jos Beauty Salon, Inc. for the above-mentioned deficiency in Federal income tax of Betty Jos Beauty Salon, Inc., together with interest thereon as provided by law. Due to *481 concessions by the petitioners, [1] the sole issue for decision is whether the receipt of $ 30,000 allocated to a covenant not to compete in an agreement selling virtually all of the assets of Betty Jos Beauty Salon, Inc. after a plan of complete liquidation was adopted is accorded non-recognition treatment under section 337. [2]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioner Shila D. MacDonald and Scott D. MacDonald, wife and husband, resided at North Olmsted, Ohio, at the time their petitions were filed. Petitioner Betty Jos Beauty Salon, Inc., was an Ohio corporation with its principal place of business at North *482 Olmsted, Ohio. Betty Jos Beauty Salon, Inc. ("Betty Joe") was incorporated in 1961 by Betty I. Colli. Prior to 1976, the corporation owned and operated salons at six or seven locations in the western suburbs of Cleveland, Ohio. From Betty Jos' inception, Betty I. Colli owned virtually its entire stock and managed its day-to-day affairs. A small portion of the stock of Betty Jos, however, was owned by Shila MacDonald, Betty I. Colli's daughter. In June 1974, Shila and Scott MacDonald purchased Betty I. Colli's remaining shares in Betty Jos for $ 85,000. Thereafter, Shila and Scott MacDonald each held 50 percent of the stock of Betty Jos. In connection with the purchase, Betty I. Colli signed a covenant not to compete with Betty Jos. Betty I. Colli continued to work at Betty Jos until July, 1976. Shila and Scott MacDonald operated Betty Jos (with the assistance of Betty I. Colli) up through July of 1976. Shila, in addition to managing the corporation, was a beautician licensed by the State of Ohio and spent two days each week serving customers personally. Scott was a corporate pilot for TRW, temporarily out of work between 1974 and 1976. During that period he did cleaning *483 and remodeling work for six shops owned by Betty Jos. In March, 1976, Scott stopped working for Betty Jos and returned to his prior job with TRW. Increasingly after 1974, the MacDonalds' found the operation of Betty Jos to be burdensome. In early 1976 they decided to sell the corporation. They asked H. Ernst Veith ("Veith"), their accountant, to look for a buyer. Veith found an interested party: Adam Hetzel ("Hetzel"). The MacDonalds gave Veith full authority, along with William R. Giesser ("Giesser"), an attorney, to negotiate both the price and terms of a sale agreement with Hetzel. Hetzel, in turn, authorized Mervin L. Goldberg ("Goldberg"), an attorney, to negotiate with Veith and Giesser. Originally, Veith proposed to Goldberg a sale of all of the MacDonalds' stock in Betty Jos for $ 110,000. Hetzel, however, was not interested in owning the corporation, but rather desired its assets as a going business. A $ 100,000 figure was arrived at between the parties. At this point Goldberg and Giesser, the attorneys, began preparing the specifics of the deal. A letter of intent was sent by Goldberg to Giesser on July 2, 1976, setting out, preliminarily, the terms of *484 the deal. According to this letter, the buyer would purchase all existing equipment, leasehold improvements, inventory and goodwill of the six existing Betty Jo Salons from the seller. In addition the seller would assign all leases for the six salons and "a presently existing non-competition agreement between Betty Jo Colli and the seller" to the buyer. Paragraph 7 of the letter of intent stated: 7. The seller agrees that the purchase price shall be allocated as follows: (a) $ 10,000 per salon ($ 60,000) for the equipment and leasehold improvements contained therein. (b) $ 30,000 for a five year, 10 mile radius, non-competition clause by the seller, with the exception that Shila MacDonald may work for Adam Hetzel without being in violation. (c) $ 10,000 for goodwill. The letter of intent contained blank lines for the signatures of Adam Hetzel, Shila MacDonald, Scott MacDonald, "Betty Jo, Inc." and William R. Giesser (as proposed escrow agent) on which the respective parties were to indicate agreement with the letter. Only Hetzel signed the letter of intent. On July 10, 1976, Giesser sent a revised copy of the original letter of intent to Goldberg. The revised letter, *485 also dated July 2, 1976, followed the format of the original letter, but made several minor changes -- among other things, reference to the pre-existing non-competition agreement of Betty I. Colli was removed and paragraph 7 was altered to read as follows: 7. The seller agrees that the purchase price shall be allocated as follows: (a) $ 10,000 per salon ($ 60,000) for the equipment and leasehold improvements contained therein. (b) $ 30,000 for a five year, 10 mile radius, non-competition clause by the seller, with the exception that Shila MacDonald may work as a beautician for Adam Hetzel or any other Beauty shop of her choice without being in violation. (c) $ 10,000 for goodwill. On the signature lines following the terms of the contract, Hetzel, Shila MacDonald, Scott MacDonald and Giesser all signed as individuals. On the signature line for "Betty Jo, Inc.," Shila MacDonald signed in her capacity as president of the corporation. On July 21, 1976, Giesser sent a draft "Agreement of Sale of Corporate Assets" to Goldberg for his perusal. This draft agreement generally followed the terms of the agreed-to letter of intent, but with some important modifications: First, *486 though the purchase price of $ 100,000 was retained, the draft agreement specifically stated, "The name 'Betty Jo Beauty Salons' is not transferred hereby nor is Good Will being conveyed." Second, the language of paragraph 7 of the agreed-to letter of intent was reworded in the draft agreement to read: Seller and specifically Shila MacDonald, agrees that it will not engage in or operate, nor will its shareholders, directors engage in or operate in a like or similar business within a radius of 10 miles, except that Shila MacDonald may work as a beautician for the Buyer or as a beautician in any other beauty shop of her choice without being in violation, and further that this covenant not to compete does not apply either directly or indirectly to Betty Jo Colli. The value of this covenant is set at $ 30,000.00, the remaining amount of the purchase price is attributed to the purchase of furniture, fixtures and equipment located in the six stores. During the course of the negotiations for the asset purchase, Goldberg and Hetzel were made aware of the fact that Betty Jos intended to consummate the sale only after the shareholders adopted a plan of complete liquidation. Both the draft *487 agreement of July 21, 1976, and the ultimate agreement signed July 31, 1976, contained the following paragraph: Whereas, the Seller [Betty Jos] has provided for the winding up and settling of its affairs in voluntary dissolution and for the distribution to its stockholders of its net assets in complete liquidation of Seller. * * * On July 23, 1976, a shareholders meeting of Betty Jos was held regarding (according to the corporate minutes) "the sale of corporate assets to Adam Hetzel and the dissolution and liquidation of the corporation within 12 months under section 337 of the Internal Revenue Code." At the meeting a plan of complete liquidation was adopted and the proposed sale of assets to Hetzel was authorized. On July 31, 1976, in "Agreement for Sale of Corporate Assets" was entered into between Hetzel as buyer and Betty Jos as seller. In regard to the allocation of the $ 100,000 purchase price and the covenants not to compete the agreement, typed on Giesser's legal stationery, provided: Seller and specifically Shila MacDonald, agrees that it will not engage in or operate, nor will its shareholders, directors engage in or operate in a like or *488 similar business for a period of five (5) years, within a radius of 10 miles, except that Shila MacDonald may work as a beautician for the Buyer or as a beautician in any other beauty shop of her choice without being in violation, and further that this covenant not to compete does not apply either directly or indirectly to Betty Jo Colli. The value of this covenant is set at $ 30,000.00, and $ 10,000.00 of purchase price is collated as good will (but does not include transfer of the same), the remaining amount of the purchase price is attributed to the purchase of furniture, fixtures and equipment located in the six stores. The agreement was signed on behalf of the seller by Shila MacDonald as president and Scott MacDonald as secretary and on behalf of the buyer by Hetzel. In addition each page of the agreement was read and initialed by each of the above individuals. At the time they signed the agreement, Shila and Scott MacDonald were aware of the meaning of a covenant not to compete and were aware that a covenant not to compete was included in the agreement. All the assets of Betty Jos were distributed to the MacDonalds within 12 months of the adoption of the plan of complete *489 liquidation. A certificate of dissolution of Betty Jos was filed with the State of Ohio on December 30, 1976. After the sale of assets, Shila MacDonald worked for Hetzel as a beautician for 10 months. Thereafter, Shila went to work as a beautician for her mother who had opened a new beauty shop within a mile from one of the shops previously owned by Betty Jos. In its 1976 corporate income tax return, Betty Jos reported no taxable income on its sale of assets to Hetzel under section 337. In his statutory notice of deficiency to each petitioner herein, respondent determined that the $ 30,000 allocated to the covenant not to compete in the Agreement for Sale of Corporate Assets was not gain realized from the sale of "property" as defined in section 337(b). Accordingly, respondent increased Betty Jos ordinary income for the taxable year 1976 by $ 30,000. OPINION Under the terms of the Agreement for Sale of Corporate Assets, $ 30,000 was specifically allocated to a covenant not to compete on the part of Betty Jos. Petitioners contend that notwithstanding this allocation, the covenant not to compete 1) had no value because in actual fact it restricted no one from competing, *490 2) lacked business reality because the buyer knew that Betty Jos and the MacDonalds had no intention of competing in the future, 3) was inserted by the buyer in the agreement merely for tax purposes long after the $ 100,000 selling price had been agreed to and 4) in any case, was property on which gain did not have to be recognized by Betty Jos due to the corporation's liquidation under section 337. Respondent, on the other hand, argues that the terms of the asset sale agreement are binding on petitioners, that they reflect economic reality and that the $ 30,000 of gain realized by Betty Jos as a result of signing the covenant not to compete is not excludible from the corporation's income by virtue of section 337. In Harvey Radio Laboratories, Inc. v. Commissioner,470 F.2d 118 (1st Cir. 1972), affg. a Memorandum Opinion of this Court, the Circuit Court held that an amount received by a corporation for a covenant not to compete entered into subsequent to the adoption of a plan of complete liquidation constituted ordinary income to the corporation and was not gain from the sale or exchange of property within the meaning of section 337. [3] Accordingly, unless *491 petitioners adduce "strong proof" that the parties did not intend or bargain for a covenant not to compete and that their allocation has no arguable relationship with business reality, they will be bound by the terms of their agreement and Betty Jos will have realized ordinary income in 1976 not excludible under section 337. Major v. Commissioner,76 T.C. 239 (1981), on appeal (7th Cir., July 9, 1981); Lazisky v. Commissioner,72 T.C. 495 (1979), affd. on another issue sub nom. Magnolia Surf, Inc. v. Commissioner,636 F.2d 11 (1st Cir. 1980). [4]
*492 Petitioners have failed to prove either that they did not bargain for a covenant not to compete or that the allocation made in the covenant had no relationship with business reality. It is apparent from the findings of fact that the petitioners intended to enter into a covenant not to compete and that such covenant was not sprung upon them by Hetzel at the last moment. In the first letter of intent drafted by Hetzel's attorney, a covenant not to compete was included, together with an allocation of $ 30,000 of the purchase price to such covenant. This letter of intent was redrafted by petitioners' attorney who modified the terms of the covenant to allow Shila MacDonald to continue to be a beautician, though not operate a beauty salon. Petitioners' attorney did not, however, change the amount of the allocation of the total purchase price to the covenant. This second letter of intent was signed by petitioners both in their corporate and individual capacities. It was petitioners' attorney who also wrote the first and second drafts of the Agreement for Sale of Corporate Assets. Those drafts both contained rephrased versions of the covenant not to compete together with the $ 30,000 *493 allocation in purchase price carried over from the letters of intent. We think these facts amply demonstrate that both the MacDonalds and their lawyer intended from an early period in the negotiations to sign a covenant not to compete on behalf of Betty Jos and were willing to allocate $ 30,000 to such covenant. Neither have petitioners demonstrated by "strong proof" that the $ 30,000 allocated to the covenant lacked economic reality. Petitioners contend that the covenant in actual fact binds no one from competing with Hetzel and therefore is valueless. We agree with petitioners that the covenant does not bind Betty I. Colli from competing and arguably does not bind the MacDonalds from competing (since the asset sale agreement was signed by the MacDonalds in their capacity as corporate officers of Betty Jos and not, apparently, as individuals). However, the covenant still clearly applies to legally bind Betty Jos as a corporate entity. Petitioners attempt to argue that the covenant would be unenforceable because the goodwill of Betty Jos was not sold to Hetzel along with the covenant and that a covenant's only legitimate purpose is to protect goodwill just purchased, citing *494 Kinney v. Commissioner,58 T.C. 1038, 1042 (1972), quoting Balthrope v. Commissioner,356 F.2d 28, 31 (5th Cir. 1966), affg. a Memorandum Opinion of this Court. The status of Betty Jos goodwill, however, is not as clear as petitioners would have us believe. In the two letters of intent, $ 10,000 of the purchase price was allocated to Hetzel's purchase of Betty Jos' goodwill. In the agreement of sale, $ 10,000 was also allocated to the purchase of Betty Jos' goodwill, though with a cryptic parenthetical clause implying that the goodwill was not being transferred. Even assuming, without deciding, that the signing of a covenant not to compete without a simultaneous transfer of goodwill would make a covenant not to compete unenforceable, petitioners have not met their burden of showing that their agreement -- ambiguously drafted by their own attorney -- did not transfer Betty Jos goodwill. Petitioners contend that the covenant not to compete, even if it were legally binding on Betty Jos, would in practice be valueless because Betty Jos was in the process of liquidation and had no intention of competing. Since Hetzel knew this fact, petitioners *495 argue, a reasonable business man would not have sought such a covenant and any such covenant entered into should be considered a nullity for tax purposes. The ability (and to a lesser extent, intention) of a taxpayer to compete is indeed a factor that courts consider in determining the economic substance of a covenant not to compete. See O'Dell & Co. v. Commissioner,61 T.C. 461, 468-469 (1974), and cases cited therein. However, the mere fact that a corporation has adopted a plan of liquidation prior to signing a covenant not to compete and that that fact was communicated to the buyer does not vitiate the covenant for tax purposes; a buyer, for his protection, may seek a covenant not to compete just in case the liquidation of the corporation does not transpire. Harvey Radio Laboratories, Inc. v. Commissioner,supra.
Clearly, Betty Jos had the ability to take the proceeds of the sale of its assets and reinvest them in new beauty salons in the same neighborhoods as its former shops. It also had the corporate talent, in the persons of its officers, to manage such new shops successfully. While the MacDonalds may have expressed a desire to *496 get out of the business of managing beauty salons, we cannot say that reasonable businessmen, genuinely concerned with their economic futures, would not have sought protection against the nonoccurrence of such an event. Schulz v. Commissioner,supra.
Indeed, Hetzel's desire for a covenant not to compete does not seem unreasonable in light of subsequent events: within a year Betty I. Colli was again operating a beauty salon less than one mile from one of her former locations and employing Shila MacDonald there. The MacDonalds did not completely abandon their beauty shop employments and live outside the area covered by the covenants, as did the taxpayers in several cases cited by petitioners. See, e.g., Rich Hill Insurance Agency, Inc. v. Commissioner,58 T.C. 610 (1972); Schmitz v. Commissioner,51 T.C. 306, 319 (1968), affd. sub nom. Throndson v. Commissioner,457 F.2d 1022 (9th Cir. 1972). Certainly, on this record, petitioners have failed to adduce strong proof that the covenant not to compete entered into by Betty Jos was not worth the $ 30,000 value allocated to it. [5]
*497 Since we have found that the covenant not to compete was actually bargained for between the parties and had an arguable relationship with business reality, we hold that Betty Jos realized ordinary income on the signing of such covenant and receipt of payment therefore in 1976. The $ 30,000 of gain was not excludable from Betty Jos income by reason of section 337. Harvey Radio Laboratories, Inc. v. Commissioner,supra.
Decisions will be entered for the respondent.
Footnotes
1. Petitioners Shila D. MacDonald and Scott D. MacDonald concede that they are liable as transferees for any deficiency found regarding Betty Jos Beauty Salon, Inc., together with interest thereon as provided by law. Petitioners also concede respondent's adjustments relating to depreciation recapture. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year before the Court.↩
3. Cf. Rev. Rul. 74-29, 1974-1 C.B. 79↩. 4. This "strong proof" test, as stated in Schulz v. Commissioner,294 F.2d 52, 55 (9th Cir. 1961), affg. 34 T.C. 235 (1960), is: "[T]he covenant must have some independent basis in fact or some arguable relationship with business reality such that reasonable men, genuinely concerned with their economic future, might bargain for such an agreement." Respondent once again invites this Court to apply a stricter test, the so-called Danielson rule. The Danielson rule, followed by a number of circuits, provides that a party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc. [Commissioner v. Danielson,378 F.2d 771, 775 (3d Cir. 1967).] The Sixth Circuit, however, to which this case is appealable, has until now applied the "strong proof" rule. Montesi v. Commissioner,340 F.2d 97 (6th Cir. 1965), affg. 40 T.C. 511 (1963). See also Bennett v. Commissioner,T.C. Memo. 1970-273, affd. per cuiram 450 F.2d 959 (6th Cir. 1971). Accordingly, under the rule of Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971), and our own prior precedents, we apply the "strong proof" rule here, and decline respondent's invitation.
5. Respondent has asserted that the full $ 30,000 allocated to the covenant be taxed to Betty Jos and not the MacDonalds as individuals. Petitioners make no contention that the $ 30,000 should in fact be further allocated between the portion of the covenant binding Betty Jos and the portion arguably binding the petitioners as individuals. Accordingly, we express no opinion as to whether an apportionment of the covenant's value would be appropriate in the instant circumstances. Cf. Harvey Radio Laboratories, Inc. v. Commissioner,supra,↩ where an apportionment between the liquidating corporation's covenant and the covenants of its controlling stockholders was effected by the parties and upheld by the court.